Christopher W. JONES, Individually, and as Representative of a Class Consisting of all Park Police Officers Employed by the City of Houston, and the Houston Park Police Officers Association, Appellants,

v.

The CITY OF HOUSTON and an Unidentified Class of all Class A Police Officers Employed by the City of Houston, Appellees.

No. 01–94–00787–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 1995.

Rehearing Overruled Oct. 12, 1995.

O.F. Jones, III, Victoria, for appellants.

Fred A. Keys, Jr., Houston, for appellees.

Before OLIVER–PARROTT, C.J., and ANDELL and HEDGES, JJ.

## OPINION

ANDELL, Justice.

This is an appeal from the trial court's order granting summary judgment in favor of appellees, the City of Houston, and an unidentified class of class A Houston police officers, in an action brought by appellants, Christopher W. Jones, individually, and as representative of a class consisting of all park police officers employed by the City of Houston, and the Houston Park Police Officer's Association (park police officers), seeking declaratory relief and back pay. We affirm the trial court's judgment.

## FACTS AND PROCEDURAL POSTURE

In this class action suit, more than 50 park police officers sought a declaratory judgment declaring that the classification of the park police under Houston city ordinances violates certain provisions of the Fire Fighters' and Police Officers' Civil Service Act,[1] and back pay as a result of the wrongful classification. Houston ordinances categorize peace officers into four classes: (1) class A—uniformed and detective class; (2) class B—technical class; (3) class C—communication class; and (4) class D—park police. *See* HOUSTON, TEX., REV. ORDINANCES NO. 85–1747 (Oct. 1985). Within those classes, the officers are further subdivided into classifications based upon rank and duties (e.g., police officer, lieutenant, captain, etc.). According to the park police officers, they performed the same duties as officers who are classified as class A—uniformed and detective class. Therefore, they sought a declaration that they were entitled to maintain their current seniority and be transferred to class A status and receive back pay and benefits from September 1, 1985, until 1989 when the City equalized the pay between class A and class D officers.

The City sought to include all Houston police employee groups as third party defendants. The trial court found that the employee groups lacked standing to enter the suit, but a class was certified that consisted of all Houston police class A officers.[2] The park police officers filed two motions for partial summary judgment. The City responded and filed two cross-motions for summary judgment. The trial court granted the motions filed by the City as well as a motion for summary judgment filed by the class A officers. The trial court then issued a final judgment that consolidated the five summary judgment rulings. According to its interpretation of the applicable statutory provisions, the trial court concluded that: (1) the park police are not class A officers; (2) the City could legally classify the park police as class D officers; (3) class D officers are denied entry into class A except by application, qual-

1. Tex.Loc.Gov't Code Ann. §§ 143.001–.134 (Vernon 1988 & Supp.1995).

2. The record does not specify the name of the class representative, so we will refer to the class in this appeal as an unidentified class of all class A police officers employed by the City of Houston.

ification, and entrance at an entry-level position; (4) there is no statutory requirement that class D officers be compensated in the same manner or amount as class A officers; and (5) there are sufficient differences between class D and class A officers to conclude that the Houston City Council did not act in an arbitrary, capricious, or unreasonable manner in determining that benefits for. class A officers would be greater than those made available for class D officers.

The park police officers appeal the trial court's judgment and, in seven points of error, contend that the trial court erred by· refusing to apply the doctrine of collateral estoppel and by incorrectly ruling on the five motions for summary judgment.

**Collateral Estoppel**

In their first point of error, the park police officers allege that the trial court erred by refusing to hold that the judgment in *Hughes v. City of Houston*, No. 01–90–00434–CV, 1991 WL 235302 (Tex.App.—Houston [1st Dist.] November 14, 1991, writ denied) (not designated for publication), was decisive and controlling as to all issues in this case through the doctrines of *res judicata* and collateral estoppel.

■ In their first motion for summary judgment, the park police officers claimed that *res judicata* and collateral estoppel were applicable in this case. However, in both the trial court and on appeal, their argument addresses only whether collateral estoppel applies. They neither explain how the doctrine of *res judicata* applies, nor cite any caselaw supporting the claim. In fact, the term *"res judicata"* is only referred to in the language of their first point of error and is never mentioned in the argument portion of their brief. Therefore, we will not consider the doctrine of *res judicata*, as a separate legal concept from the doctrine of collateral estoppel. TEX.R.APP.P. 52(a), 74(f).

■ Under the common-law doctrine of collateral estoppel, or issue preclusion, a party may be precluded from litigating an issue if: (1) the facts sought to be litigated in the

second suit were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex.1994). The park police officers argue that the City is precluded from relitigating all issues in this case because *Hughes* decided the same issues in a suit between the City and the Houston Airport Police Officers.

■ The burden is on the park police officers to present sufficient evidence to establish that the doctrine of collateral estoppel is applicable. *Scurlock Oil Co. v. Smithwick*, 787 S.W.2d 560, 562 (Tex.App.—Corpus Christi 1990, no writ.) To meet this burden, the party relying on the doctrine is required to introduce into evidence both the prior judgment *and pleadings* from the prior suit. *Traweek v. Larkin*, 708 S.W.2d 942, 945 (Tex. App.—Tyler 1986, no writ) (emphasis added) (doctrine of collateral estoppel not applicable in second suit if party does not introduce both the prior judgment and pleadings).

In the instant case, while the park police officers attached the judgment from the *Hughes* case to their first motion for summary judgment, they failed to place any pleadings from that case into evidence. The *Hughes* judgment, standing alone, does not show that any facts that are essential to the park police officers' claims against the City in this case were fairly and fully litigated in *Hughes*. In *Hughes*, a jury found that the duties performed by the airport police were substantially the same as those performed by the patrol division of the Houston Police Department (HPD). As a result, the trial court issued a declaratory judgment that *in the future* the City was required to pay the airport police the same rate as that received by the patrol division of HPD.

In this case, the park police officers are currently receiving the same benefits as those received by class A officers. The only issues currently in dispute are the right of the park police officers to receive back pay and their right to be officially classified as

class A officers. Far from supporting the position of the park police officers, the trial court in *Hughes* specifically found that the airport police were not entitled to receive back pay. On appeal, this Court affirmed, holding that the jury verdict did not authorize an award of back pay.

Furthermore, *Hughes* dealt with the duties performed by the airport police and the *patrol division* of HPD. No references were made to the park police officers or the class A officers that are involved in this case. The airport police are separate and distinct from the park police, and there is nothing in the record to show where the patrol division exists within the classification system. There appears to have been no issue raised in *Hughes* concerning the equality between class A officers and the park police. Even assuming that the airport and park police are similar, the airport police officers did not claim that they had a right to keep their current seniority and be granted class A status. Therefore, the park police officers presented no evidence to the trial court which established that the issues in this case, namely, the right of park police officers back pay and to be granted class A status with full seniority, were fairly and fully litigated in *Hughes*. Therefore, the doctrine of collateral estoppel is not applicable.

We overrule the park police officers' first point of error.

In their remaining points of error, the park police officers contend that the trial court erroneously ruled on the competing motions for summary judgment.

## STANDARD OF REVIEW ON SUMMARY JUDGMENTS

■ Summary judgment is proper if a party's summary judgment proof establishes, as a matter of law, that no genuine issue of material fact exists concerning one or more of the essential elements of the cause of action. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); Tex. R.Civ.P. 166a(c).

When both parties move for summary judgment, each party must carry its own burden as the movant and, in response to the other party's motion, as the nonmovant. When both motions are before the court, the court may consider all of the summary judgment evidence in deciding whether to grant either motion. The court can rely on one party's evidence to supply the missing proof in the other party's motion. But the court must indulge all reasonable inferences and resolve all doubts in favor of the losing party.

*International Ass'n of Fire Fighters v. Baytown,* 837 S.W.2d 783, 786 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (citations omitted).

■ If both parties file competing motions for summary judgment and one is granted and the other overruled, on appeal this Court will determine all questions presented, including the propriety of the order overruling the losing party's motion. *International Ass'n of Fire Fighters,* 837 S.W.2d at 786. The Court is authorized to either affirm the judgment that the trial court rendered or reverse the judgment and render the judgment that the trial court should have rendered. *Id.;* Tex.R.App.P. 80(b).

## The park police officers' first motion for summary judgment

In their second point of error, the park police officers claim that the trial court erred by denying their first motion for partial summary judgment. The first motion for summary judgment filed by the park police officers was based solely on their claim that *Hughes* collaterally estopped the City from relitigating all issues in this case. Because this contention was fully addressed by the Court in point of error one, we need not address this issue a second time.

We overrule the park police officers' second point of error.

## The City's first motion for summary judgment

In their fourth point of error, the park police officers assert that the trial court

erred in granting the City's first motion for summary judgment.

■ In their petition, the park police officers maintained that TEX.LOC.GOV'T CODE ANN. §§ 143.103(a) and 143.109 (Vernon 1988), limited the City's ability to classify the park police in a separate classification from class A—uniformed and detective officers. According to the park police officers' interpretation of chapter 143, the City can only properly create three classes of police officers: uniformed and detective class; communication class; and technical class. Since they allege that they perform "substantially the same duties" as officers classified as class A—uniformed and detective officers, the park police officers maintain that section 143.103 obligated the City to classify them as class A officers, not as class D.

Section 143.103(a) of the Texas Local Government Code provides:

> A peace officer employed by a Municipal Department in which the peace officer performs duties in a *specialized police division,* including a person employed as a *park police officer,* airport police officer, or municipal marshall, is entitled to civil service status under this chapter. The governing body of the municipality employing a peace officer in a specialized police division shall *classify the officer in accordance with Section 143.021 and the duties performed* by the peace officer.

TEX.LOC.GOV'T CODE ANN. § 143.103(a) (Vernon 1988) (emphasis added).[3] Section 143.109 refers to crossover promotions in the police department. The section references three distinct classes: the communications class, technical class, and uniformed and detective class and provides that a person may not be promoted to a different class unless he or she qualifies for and enters the new class at the lowest entry level of that class. TEX. LOC.GOV'T CODE ANN. § 143.109 (Vernon 1988). The park police officers argue that

when sections 143.103(a) and 143.109 are read in conjunction, the City could not properly create a separate class D for the park police, but was obligated to include them within class A—uniformed and detective officers.

The City's first motion for summary judgment asserted that the contentions made by the park police officers were contrary to the plain meaning of chapter 143. According to the City, nothing prohibits it from creating a separate class for park police, and the interpretation given to section 143.103(a) by the park police is in direct contravention of sections 143.103(b) and 143.109(c). The trial court agreed with the City and held as a matter of law that: (1) the park police are not class A officers; (2) the City could legally classify the park police as class D officers; and (3) class D officers are denied entry into class A except by application, qualification, and entrance at an entry level position.

■ Home rule cities, such as Houston, are given broad powers under the Texas Constitution and statutes. TEX. CONST. art. XI, § 5; TEX.LOC.GOV'T CODE ANN. § 51.072 (Vernon 1988). The City, through the city council, has the power to create positions, adopt a classification plan, set the rate of pay, and abolish positions. *International Ass'n of Fire Fighters,* 837 S.W.2d at 788. Although a home-rule municipality's powers may be limited by the legislature, if the legislature decides to exercise that authority, its intention to do so should appear with "unmistakable clarity." *Sweetwater v. Geron,* 380 S.W.2d 550, 552 (Tex.1964). Appellants have not identified any specific statutory language or legislative history that would indicate the legislature intended to prevent the City from creating more than three classes of peace officers, and designating the park police as class D officers as long as the park police officers were afforded civil service protection.

While it is true that section 143.109(c) only

---

**3.** Section 143.021 provides: "The commission shall provide for the classification of all fire fighters and police officers. The municipality's governing body shall establish the classifications by ordinance. The governing body by ordinance shall prescribe the number of positions in each classification." TEX.LOC.GOV'T CODE ANN. § 143.021(a) (Vernon 1988).

refers to three distinct classes of officers,[4] it appears that the specialized police divisions, including the park police, were dealt with as a separate class in section 143.103. Section 143.103 brought the specialized police forces into the scope of the civil service act, *see Lee v. City of Houston*, 807 S.W.2d 290, 293 (Tex.1991), but it dealt with them in a separate section from that of the other police forces. If section 143.109(c) was meant to limit the City's ability to create more than three classes of officers, section 143.103, which deals with specialized officers, such as park police officers, would be redundant.

Section 143.021(a) simply requires the commission to pass ordinances that establish a classification scheme for all fire fighters and police officers. TEX.LOCAL GOV'T CODE ANN. § 143.021(a) (Vernon 1988). The Texas Supreme Court has noted:

> The purpose of the [Civil Service] Act, as stated in section 143.001, is "to secure efficient fire and police departments composed of capable personnel who are free from political influence and who have permanent employment tenure as public servants." To that end, the Act requires the city council, or other legislative body, to provide by ordinance for the classification of all fire fighters and police officers; that is, to place all such officers within the protection of a civil service system.

*Lee*, 807 S.W.2d at 291. The City has included park police officers within the protection of a civil service system; it has just not placed the officers in the same class as uniformed and detective officers. Nothing in chapter 143 limits the City's ability to designate the park police as class D officers.

It is undisputed that classes A and D are treated as separate and distinct classes. Section 143.109(c) provides that members of the uniformed and detective class, who are designated as class A officers in Houston,

"[are] not eligible for promotion to a position outside [his or her] class, and lateral crossover by promotion is prohibited. A person may change classes only by qualifying for and entering the new class at the lowest entry level of that class." TEX.LOC.GOV'T CODE ANN. § 143.109(c) (Vernon 1988). Section 143.103(b), which deals with specialized police officers, including park police officers, likewise provides:

> A peace officer who is employed in a *specialized police division* is eligible for promotion within the officer's respective class. A *member of a particular class is not eligible for promotion to a position outside that class,* and lateral crossover by promotion by a member of one class to another class is prohibited. If a member of one class wants to change classes, the member *must qualify and enter the new class at the lowest entry level of that class.*

TEX.LOC.GOV'T CODE ANN. § 143.103(b) (Vernon 1988) (emphasis added). Since park police officers are in a separate class from the uniformed and detective officers, the plain language of the statute mandates that they can only enter class A if they "qualify and enter the new class at the lowest entry level of that class." Therefore, the trial court correctly ruled that the park police officers are not entitled to be transferred into class A while maintaining their current level of seniority.

We overrule the park police officers' fourth point of error.

### The park police officers' second motion for summary judgment

In their third and fifth points of error, the park police officers argue that the trial court erred in denying their second motion for partial summary judgment and granting the countermotion filed by the City.

 The second motion for partial summary judgment filed by the park police offi-

---

4. This section states: "A member of the *technical, communications, or uniformed and detective class* is not eligible for promotion to a position outside that class, and lateral crossover by promotion is prohibited. A person may change classes only by qualifying for and entering the new class at the lowest entry level of that class. TEX.LOC.GOV'T CODE ANN. § 143.109(c) (Vernon 1988).

cers requested the trial court to reconsider the first summary judgment ruling and additionally alleged that even if the park police officers were not entitled to be transferred to class A status, they were entitled to back pay as a matter of law because they performed the exact same duties and functions as class A officers. The City's countermotion maintained that since the trial court had previously determined that park police officers were a separate class and were not entitled to be transferred to class A status as a matter of law, there is no *statutory* basis for requiring the City to give park police officers back pay. Furthermore, the City asserted that even if there was such a basis, there were substantial differences between the abilities, duties, and functions of class A and class D officers as a matter of law.

Section 143.110(a) of the Local Government Code provides that officers in the *same classification* are entitled to receive the same base salary. Because we have determined that park police officers, as class D officers, are separate and distinct from class A, there is no *statutory* requirement that class D officers be compensated in the same manner or amount as class A officers. However, even if there was a statutory requirement that the park police officers are entitled to receive the same rate of pay as the uniformed and detective officers if the park police officers performed the same duties, the park police did not provide sufficient evidence to prove that the two classes did, in fact, perform the same duties and functions as a matter of law.

The summary judgment evidence provided by the park police officers simply showed that there were *some basic similarities* between the park police officers and class A officers, such as both classes wore a uniform and drove patrol cars. The summary judgment evidence provided by both the park police officers and the City, however, showed there were *substantial differences* between the two classes. Among other things, the evidence showed: (1) park police officers were originally hired by the Parks and Recreation Department, which exacted lower entrance standards than the HPD; (2) over 50 percent of the park police officers were rejected by HPD when they applied to be class A officers; (3) the scope of the duties and authority of the park police officers were specifically limited to patrolling parks, while class A officers' duties extended city-wide; (4) park police officers had less training and experience than that of a class A officer; and (5) park police officers were required to summon a class A officer to handle all major investigations on crimes that occurred in the parks themselves.

We first consider the park police officers' complaint that the trial court erred in refusing to grant their second motion for summary judgment. Viewing the evidence in the light most favorable to the City, the park police officers did not produce sufficient evidence to prove as a matter of law the park police performed the exact same duties and functions as class A officers during the relevant time period. We next consider whether the trial court erred in granting the City's countermotion. Viewing the evidence in the light most favorable to the park police officers, the evidence did establish as a matter of law that there were substantial differences in the authority and functions of the two classes. Significantly, the evidence showed that park police officers were specifically hired to provide security for the parks, and if a major crime occurred on park premises, the park police officers were required to summon a class A officer to handle the investigation. This fact, standing alone, is sufficient to show that the authority and scope of the duties of the two classes differed as a matter of law. Thus, the trial court correctly denied the park police officers' second motion for partial summary judgment and granted the City's counter motion.

We overrule the park police officers' third and fifth points of error.

### The third-party defendant's motion for summary judgment

In their seventh point of error, the park police officers contend that the trial court erred in granting the motion for summary

judgment filed by the class A officers as third-party defendants. They assert that the motion was merely derivative of the arguments advanced by the City, and because the City's arguments were invalid, the third-party defendant's motion was likewise flawed.

Because of our holding on the park police officer's previous points of error, this point is without merit.

We overrule appellants' seventh point of error.

**Final Judgment**

In their sixth point of error, the park police officers allege that the trial court erred in entering final judgment in favor of the City because the judgment was based on the three summary judgments granted in favor of the City and the third-party defendants and such orders were erroneous. Once again, our previous holdings make consideration of this point unnecessary.

We overrule appellants' sixth point of error.

We affirm the trial court's judgment.