**TEXAS CAPITAL SECURITIES MANAGEMENT, INC., et al., Appellants,**

v.

**J.D. SANDEFER, III, et al., Appellees.**

No. 06–01–00131–CV.

Court of Appeals of Texas, Texarkana.

Submitted May 30, 2002.

Decided June 19, 2002.

Robert M. Corn, McFall Sherwood & Breitbeil, PC, Houston, for Texas Capital Securities Management, Thomas Buckley, Patrick Smetek.

Randall L. Brim, Kurt M. Hanson, Singleton, Cooksey, Hanson & Lamberth, LLP, Houston, for Thomas Reckling, IV.

Patrick A. Zummo, Zummo, Mitchell & Perry, Houston, for appellee.

Before GRANT, ROSS and CORNELIUS,* JJ.

* William J. Cornelius, C.J., Retired, Sitting by Assignment.

## OPINION

Opinion by Justice ROSS.

Thomas Buckley, Patrick Smetek, Thomas R. Reckling, IV, and Texas Capital Securities Management, Inc. (TCSM) (collectively Appellants) appeal the trial court's granting of summary judgment in favor of J.D. Sandefer, III, and Stephen F. Smith (Appellees) on their claims under the Texas Securities Act.[1] Appellees sued Appellants for common-law fraud, statutory fraud, violation of the Texas Securities Act, and constructive fraud. Appellees nonsuited as to the fraud claims, leaving only the violation of the Texas Securities Act claim.

Appellants contend that the trial court erred in granting Appellees' motion for summary judgment and that the trial court erred in not reducing the sum of money awarded in the summary judgment, or in not deeming the judgment satisfied. Reckling further contends the trial court erred by not granting his post-trial motions.

In *Texas Capital Securities v. Sandefer*, Appellees sued various defendants and recovered damages stemming from the sale of stock in Titan Resources, Inc. *Tex. Capital Sec., Inc. v. Sandefer*, 58 S.W.3d 760 (Tex.App.-Houston [1st Dist.] 2001, two pets. denied). Appellants were not parties to that lawsuit. The evidence in that case showed that Sandefer and Smith each invested in Titan based on the recommendation and representations of Steven Johnson, a stockbroker with Texas Capital Securities, Inc., and that both suffered losses when the value of the stock fell. Appellees sued Titan, Harris D. Ballow (a stock promoter and principal at Titan), Johnson, and Texas Capital Securities, Inc. Titan and Johnson settled before trial. A jury found that Ballow and Texas Capital Securities, Inc. made fraudulent misrepresentations to Appellees. The jury further found Ballow and Texas Capital Securities, Inc. jointly and severally liable for the $359,063.00 purchase price of the stock and determined that Ballow should pay eight million dollars in punitive damages.

In this case, Appellees sued Appellants individually for violations of the Texas Securities Act, contending they are control persons and aiders under Article 581–33 of the Texas Securities Act and are therefore liable for the conduct of Texas Capital Securities, Inc. Appellees contend that, as control persons, Appellants were in a position to prevent the violations of the Act found against Texas Capital Securities, Inc. in the *Texas Capital* case. *Id.* at 775–76.

Appellants first contend the trial court erred in holding them jointly and severally liable for the sums for which Texas Capital Securities, Inc. is liable to Appellees under the final judgment in the *Texas Capital* case. Appellees moved for a traditional summary judgment under TEX.R. CIV. P. 166a(c), based on the principle of collateral estoppel, contending Appellants are prevented from contesting the liability of Texas Capital Securities, Inc. for violating the Texas Securities Act. Appellees contend the issue of Texas Capital Securities, Inc.'s liability has already been litigated, and because Appellants were in privity with Texas Capital Securities, Inc., the *Texas Capital* judgment establishes their liability under the Texas Securities Act. Appellees also moved for traditional summary judgment based on Appellants' status as "control persons," as defined by the Texas Securities Act. Appellees contend Appellants are also liable for the actions of Texas Capital Securities, Inc. pursuant to

---

1. TEX.REV.CIV. STAT. ANN. art. 581–1, et seq. (Vernon 1964 & Supp.2002).

this status. Appellees further moved for traditional summary judgment that Appellants cannot prevail on one of the elements of their affirmative defense. Appellees finally moved for a no-evidence summary judgment under Tex.R. Civ. P. 166a(i) because they contend there is no evidence to support Appellants' affirmative defenses.

Summary judgment under Rule 166a(c) may only be granted in favor of the movants if they prove there is no genuine issue of material fact and they are entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995). Because the movant bears the burden of proof, all conflicts in the evidence are disregarded, evidence favorable to the nonmovant is taken as true, and all doubts as to the genuine issue of material fact are resolved in favor of the nonmovant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in the nonmovant's favor. *Id.* at 549.

A no-evidence summary judgment is essentially a pretrial directed verdict. We therefore apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *McCombs v. Children's Med. Ctr.*, 1 S.W.3d 256, 258–59 (Tex.App.-Texarkana 1999, pet. denied); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.-Austin 1998, no pet.).

Appellants contend Appellees failed to establish the requisites of collateral estoppel. Collateral estoppel is also known as issue preclusion. *Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 384 (Tex.1985). Collateral estoppel is more narrow than res judicata in that it only precludes the relitigation of identical issues of fact or law that were actually litigated and essential to the judgment in a prior suit. *Id.; see Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex.1992). Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties. *Van Dyke*, 697 S.W.2d at 384. Thus, unlike the broader res judicata doctrine, collateral estoppel analysis does not focus on what could have been litigated, but only on what was actually litigated and essential to the judgment.

In order to invoke collateral estoppel, a party must establish that: 1) the facts sought to be litigated in the first action were fully and fairly litigated in the prior action; 2) those facts were essential to the judgment in the first action; and 3) the parties were cast as adversaries in the first action. *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex.1991). Mutuality is not required for the invocation of collateral estoppel; rather, it is only necessary that the party against whom the plea of collateral estoppel is being asserted be a party or in privity with a party in the prior litigation. *Id.*

Appellees had the burden to present sufficient evidence to establish that the doctrine of collateral estoppel is applicable. *See Scurlock Oil Co. v. Smithwick*, 787 S.W.2d 560, 562 (Tex.App.-Corpus Christi 1990, no writ). "To meet this burden, the party relying on the doctrine is required to introduce into evidence both the prior judgment *and pleadings* from the prior suit." *Jones v. City of Houston*, 907 S.W.2d 871, 874 (Tex.App.-Houston [1st Dist.] 1995, writ denied); *see Cuellar v. City of San Antonio*, 821 S.W.2d 250, 256 (Tex.App.-San Antonio 1991, writ denied); *Smithwick*, 787 S.W.2d at 562 (party asserting collateral estoppel must introduce into evidence judgment and pleadings from prior suit or doctrine will

not apply); *Traweek v. Larkin,* 708 S.W.2d 942, 945 (Tex.App.-Tyler 1986, writ ref'd n.r.e.) (doctrine of collateral estoppel not applicable in second suit if party does not introduce both prior judgment and pleadings); *but see Bass v. Champion Int'l Corp.,* 787 S.W.2d 208, 214 (Tex.App.-Beaumont 1990, no writ) (finding no error in basing summary judgment on judgment alone without pleadings because judgment so clearly stated what was determined by earlier court there was no need to resort to pleadings). We agree with the reasoning in *Bass* that, so long as the record before the court in the second case adequately provides what was determined in the earlier case, pleadings need not be filed.

■ In this case, Appellees filed a copy of the judgment and jury charge with their motion for summary judgment, but did not include a copy of the pleadings from the *Texas Capital* case. Appellees contend the judgment and jury charge satisfy the purpose of attaching the pleadings. Appellees further contend that, at any rate, the pleadings from the *Texas Capital* case were part of the record before the trial court because Reckling included the plaintiffs' fourth amended original petition from that case in his response to Appellees' motion for summary judgment in this case. Actually, what Reckling included in his response was a copy of Sandefer and Smith's motion for leave to join additional parties in the *Texas Capital* case. It was this motion that had a copy of plaintiffs' fourth amended original petition attached as an exhibit. The record shows the trial court in the *Texas Capital* case denied the motion to join additional parties. Therefore, plaintiffs' fourth amended original petition never became a live pleading in the *Texas Capital* case.

Despite the lack of pleadings, the record before us contains the jury charge and judgment from the *Texas Capital* case and, taken together, clearly state what was determined in that case.

■ Appellants contend that Appellees have failed to prove there is no genuine issue of material fact and that Appellants were, as a matter of law, in privity to the parties in the *Texas Capital* case. "Due process requires that the rule of collateral estoppel operate only against persons who have had their day in court either as a party to the prior suit or as a privy, . . . ." *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex.1971); *see Eagle Props., Ltd.,* 807 S.W.2d at 721; *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 819 (Tex.1984). There is no general definition of privity, and the determination of who are privies requires a careful examination into the circumstances of each case. *Dairyland County Mut. Ins. Co. v. Childress,* 650 S.W.2d 770, 774 (Tex. 1983); *Benson,* 468 S.W.2d at 363. "[T]he word 'privy' includes those who control an action although not parties to it * * *; those whose interests are represented by a party to the action * * *; successors in interests." *Benson,* 468 S.W.2d at 363; *see Getty Oil Co. v. Ins. Co. of N. Am.,* 845 S.W.2d 794, 800–01 (Tex.1992); *Dairyland County Mut. Ins. Co.,* 650 S.W.2d at 774. Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right. *Benson,* 468 S.W.2d at 363; *Cannon v. Tex. Indep. Bank,* 1 S.W.3d 218, 224 (Tex.App.-Texarkana 1999, pet. denied).

Appellants contend their interests were not actually and adequately represented in the *Texas Capital* case, so it is not fair to bind them to the prior results. *See Eagle Props., Ltd.,* 807 S.W.2d at 721. Appellees argue that directors of a corporation are automatically in privity with the corpora-

tion and cite *Eagle Properties* for their position. *See id.* The directors in *Eagle Properties*, as in this suit, were defendants. However, unlike this suit, the directors in *Eagle Properties* were the ones seeking to assert collateral estoppel against the plaintiffs. The Texas Supreme Court's specific holding was that mutuality is not required for the invocation of collateral estoppel; rather, it is only necessary that the party against whom the plea of collateral estoppel is being asserted be a party or in privity with a party in the prior litigation. *Id.* No one asserted collateral estoppel against the directors in *Eagle Properties*, and the Texas Supreme Court did not hold the directors were in privity with anyone in the prior suit. *Id.* Appellees' reliance on *Eagle Properties* is misplaced; they have not directed us to any other case holding that a party's status as director or officer automatically makes the party a privy, and we have not found a case so holding.

 Federal courts have held stockholders and officers are not in privity to their corporations. *Dudley v. Smith,* 504 F.2d 979, 982 (5th Cir.1974); *Am. Range Lines, Inc. v. Comm'r of Internal Revenue,* 200 F.2d 844, 845 (2d Cir.1952). This status does not automatically show the parties had control over the prior action or that their interests were represented by a party to the action. *Benson,* 468 S.W.2d at 363. The question of privy revolves around the prior cause of action, not the time of injury. *See Myrick v. Moody Nat'l Bank,* 590 S.W.2d 766, 769 (Tex.Civ. App.-Houston [14th Dist.] 1979, writ ref'd n.r.e.).

 Appellees present evidence that, when they purchased the Titan stock in 1996, an unamended form filed in 1993 with the National Association of Securities Dealers (NASD) lists Smetek, Reckling, and Buckley as officers of Texas Capital Securities, Inc. Appellees provide no evidence that at the time of the *Texas Capital* case these three appellants still held these positions. Smetek and Reckling both create genuine issues of material fact in their affidavits. Smetek states he was president and a director until 1997. The *Texas Capital* case was instigated in late 1997. Reckling denies being an officer or director of Texas Capital Securities, Inc. in his affidavit. Each of these affidavits creates genuine issues of material fact on the issue of privity. The evidence clearly shows all three are shareholders, but a party's mere status as shareholder does not create privity absent further evidence. Although Buckley did not dispute being an officer during the *Texas Capital* case, the only evidence put forth by Appellees was that Buckley was the secretary and treasurer. This status alone, without more evidence, does not, as a matter of law, establish privity. Appellees presented no evidence Buckley, Smetek, Reckling, or TCSM participated in the *Texas Capital* lawsuit. In fact, Reckling contends he had no knowledge of the suit until the very end.

 Appellees contend TCSM, a wholly owned subsidiary of Texas Capital Securities, Inc., is in privity with Texas Capital Securities, Inc., based on a management role. The evidence provided to show TCSM's management role is the 1997 annual report which states:

> Texas Capital Securities Management Co., Inc. has entered into an agreement to indemnify the Company, assume primary liability related to certain settlement agreements with former customers and pay certain legal fees. The Company paid Texas Capital Securities Management Co., Inc. $154,000 during 1997. This amount is reflected in management fees.

No further evidence is provided as to what TCSM did. There is no evidence TCSM exerted control over or managed Texas Capital Securities, Inc. in any way. Buckley's affidavit states TCSM has never been in a position of control over Texas Capital Securities, Inc. and that it is merely a service provider and is not engaged in the securities business.

■■■ Appellees also contend the fact that Appellants used the same attorney as Texas Capital Securities, Inc. shows they are in privity with Texas Capital Securities, Inc. They direct our attention to caselaw stating that an attorney's knowledge gained during the existence of the attorney-client relationship is imputed to the client. *Allied Res. Corp. v. Mo–Vac Serv. Co.*, 871 S.W.2d 773, 778 (Tex.App.-Corpus Christi 1994, writ denied). Appellees would have us extend this principle of imputed knowledge to the circumstances of this case, where Appellants hired the attorney who represented Texas Capital Securities, Inc. in the *Texas Capital* case. Appellees contend this mutual representation in separate actions imputes privity. The caselaw on which they rely deals with settled law that imputes the knowledge of an attorney to the client in that attorney-client relationship. The mere fact that these Appellants enlisted the services of the same attorney who defended Texas Capital Securities, Inc. in the previous case does not prove privity between Appellants and Texas Capital Securities, Inc.

Genuine questions of fact remain regarding each of the Appellants and whether they were in privity with Texas Capital Securities, Inc. We hold the trial court erred in applying collateral estoppel to the Appellants.

Appellants' second point of error concerns the determination by the trial court in its summary judgment that Appellants are liable as control persons under the Texas Securities Act. Appellees seek to establish joint and several liability of Appellants as control persons for Texas Capital Securities, Inc.'s violations of the Texas Securities Act. Appellants contend the trial court erred in holding they are control persons under the Act. TEX.REV.CIV. STAT. ANN. art. 581–33(F)(1) (Vernon Supp.2002).

> Under the Act, a control person is:
>
> A person[2] who directly or indirectly controls a seller, buyer, or issuer of a security is liable ... jointly and severally with the seller, buyer, or issuer, and to the same extent as if he were the seller, buyer, or issuer, unless the controlling person sustains the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

*Id.*

The burden rested on the Appellees to establish that the Appellants are control persons under the statute. Appellants contend genuine issues of material fact remain as to whether they are control persons, and therefore the trial court improperly granted summary judgment.

The Texas Securities Act does not provide a definition of "control persons." *Id.* The comments to the statute state, "control is used in the same broad sense as in federal securities law." TEX.REV.CIV. STAT. ANN. art. 581–33F cmt. "Depending on the circumstances, a control person might include an employer, an officer or director, a large shareholder, a parent company,

---

**2.** The Act defines "person" to include a corporation. TEX.REV.CIV. STAT. ANN. art. 581–4(B)

(Vernon Supp.2002).

and a management company." *Id.*[3] The rationale for control person liability is that a control person is in a position to prevent the violation and may be able to compensate the injured investor when the primary violator is not. *Id.* The United States Fifth Circuit Court of Appeals has held that, to make a prima facie case that the defendant is a control person, a plaintiff must prove that each had actual power or influence over the controlled person and that each induced or participated in the alleged violation. *Dennis v. Gen. Imaging, Inc.,* 918 F.2d 496, 509 (5th Cir.1990); *G.A. Thompson & Co. v. Partridge,* 636 F.2d 945, 958 (5th Cir.1981).

■ As evidence of Smetek's, Buckley's, and Reckling's status as control persons, Appellees rely partly on the "Form BD" filed by Texas Capital Securities, Inc. in 1993 with the NASD, which lists Smetek, Buckley, and Reckling as control persons. Appellants contend this form does not prove they are control persons for purposes of the Texas Securities Act. They contend Appellees have not proved the term "control person" has the same meaning for purposes of the NASD as under the Texas Securities Act. NASD "Form BD" has instructions defining the term "control," but this definition was not included in Appellees' summary judgment evidence. In the absence of such definition, we cannot say the label of "control person" on the NASD form conclusively establishes Appellants as control persons under the Texas Securities Act.

■ The evidence presented clearly proves Smetek was president, a director of Texas Capital Securities, Inc., and owned between ten and twenty-five percent of the stock when the transactions occurred in 1996. According to the forms filed with the NASD, Buckley owned between ten and twenty-five percent of the stock. Both the form and Buckley's affidavit reveal he was secretary and treasurer of Texas Capital Securities, Inc. However, status alone does not automatically cause defendants to be deemed control persons under the statute. *See Dennis,* 918 F.2d at 509. Evidence was required that Smetek and Buckley had influence over at least the direction of Texas Capital Securities, Inc. *See id.* Smetek states in his affidavit that he was not responsible for reviewing information that companies seeking investors wanted forwarded to Texas Capital Securities, Inc. customers, that he was unaware any Texas Capital Securities, Inc. customer had invested with Titan, and that he had no knowledge of the investments and no reason to have knowledge of the investments. Genuine issues of material fact remain regarding whether Smetek was a control person, and the trial court erred in granting summary judgment. As for Buckley, the evidence shows he was secretary and treasurer of Texas Capital Securities, Inc., but his affidavit shows that he did not hold a license entitling him to supervise registered representatives and that he was not responsible for supervising Texas Capital Securities, Inc. brokers or representatives, did not review information that companies seeking investors wanted forwarded to Texas Capital Securities, Inc. customers, and had no knowledge or reason to have knowledge of the purchase of Titan stock by Texas Capital Securities, Inc. customers. Because genuine issues of material fact remain regarding Buckley's status as a control person, the trial court erred in

---

**3.** Although in *Busse v. Pac. Cattle Feeding Fund # 1,* 896 S.W.2d 807, 815 (Tex.App.-Texarkana 1995, writ denied), we found Busse, who was a majority shareholder and a director, to be a control person, we do not construe this case to mean evidence solely of status creates a prima facie showing of control person.

granting summary judgment on this issue as to Buckley.

 Although the NASD forms list Reckling as a vice president, Reckling's affidavit states his relationship with Texas Capital Securities, Inc. was that of a shareholder and that he was not an officer or director. This clearly creates a fact question as to Reckling's status. The trial court improperly granted summary judgment holding that Reckling was a control person.

We finally consider whether it was proper to grant summary judgment holding that TCSM, a wholly owned subsidiary of Texas Capital Securities, Inc., was a control person under the Texas Securities Act. The only evidence provided regarding TCSM is the 1997 annual report calling the fees paid to TCSM "management fees." The evidence shows TCSM agreed to indemnify Texas Capital Securities, Inc., assume primary liability related to certain settlement agreements with former customers, and pay certain legal fees. This evidence does not show any form of power or influence over Texas Capital Securities, Inc. or over Johnson, the Texas Capital Securities, Inc. broker who arranged for the sale of the Titan stock. Buckley's affidavit states TCSM has no responsibility to supervise or otherwise monitor any securities salesmen at Texas Capital Securities, Inc. Appellees failed to produce sufficient evidence to prove as a matter of law that TCSM was a control person for its parent company, Texas Capital Securities, Inc., and evidence presented by Appellants raises genuine issues of material fact regarding this issue. The trial court erred in holding TCSM was a control person of Texas Capital Securities, Inc.

Because we find the trial court erred in granting summary judgment against Appellants, we need not address Appellants' remaining points.

We reverse the summary judgment and remand the case to the trial court for further proceedings.