

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-22-00054-CV
_____

YOUNG FAMILY REVOCABLE TRUST, Appellant

V.

MARY KAYE YOUNG, ET AL., Appellees

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. 2021-229

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

When Jim Neal Young and Mary Kaye Young divorced, the final decree ordered that their Rusk County residence, located on a one-acre tract of real property, be sold. The County Court at Law of Rusk County (CCL) appointed a receiver to sell the property. Blake Bergstrom and Julie Bergstrom purchased the property, receiving a special warranty deed from the receiver. Even so, Jim refused to leave the property. Shortly thereafter, the Young Family Revocable Trust filed a trespass to try title action in the 4th Judicial District Court of Rusk County against Jim, Mary, and the receiver, arguing that the Trust owned the property. The Bergstroms intervened in the case and claimed that they owned the property. The Bergstroms filed a traditional motion for summary judgment, and the trial court granted that motion and ordered that the Trust take nothing by its title action.

On appeal, the Trust contends that the trial court erred (1) in granting the Bergstroms' motion for summary judgment because the Trust was neither a party to the divorce proceeding nor in privity with Jim and (2) because it failed to exclude the divorce decree from the summary judgment evidence. Because we find that (1) the trial court did not err in granting the Bergstroms' motion and (2) the divorce decree was authenticated, we affirm the trial court's judgment.

## I.      Factual and Procedural Background

In 1977, Velma Hinze conveyed a twenty-five-acre tract in the T.J. Jackson Survey to her sister, Annie Maline Young.[1] On or about April 4, 1988, Annie, acting as "[a]ttorney in fact for"

---

[1] It is undisputed that Annie Maline Young was also known as Maline Parrott Young.

2

Velma Hinze, purportedly conveyed a one acre parcel out of the twenty-five-acre tract to her son, Jim. The one-acre parcel, located at 4313 CR 311, Henderson, Texas, 75654, is the property at issue in this case (the Property).

In 2002, Annie created the Trust, naming herself as trustee and her two children, Jim and Dan Earl Young, as beneficiaries.[2] The beneficiaries of the Trust were specifically listed as "Jim Neal Young and Dan Earl Young if living, otherwise his estate." In 2005, Annie conveyed various tracts of and interests in real property to the Trust, including the twenty-five-acre tract.[3] A year later, Annie died. Under the terms of the Trust, Jim became the trustee.

On October 1, 2007, Jim purportedly conveyed an undivided one-half interest in the Property to his wife, Mary. On the same day, Jim, as trustee, conveyed to Jim and Mary a twenty-foot access easement across a 62.5-acre tract belonging to the Trust. About one month later, Jim and Mary executed a deed of trust to Texas Bank secured by the Property to build a house on the Property.

On November 29, 2013, Dan died. On December 19, 2013, an affidavit of heirship was filed in the records of Rusk County, stating that Dan "died intestate and was never married, never had any children and no children were ever adopted by [him] during his life."

---

[2]The Trust created by Annie is a spendthrift trust.

[3]The twenty-five-acre tract was conveyed as part of the following larger conveyance:

> 62.5 acres of land, more or less being part of the Thomas J. Jackson Survey, A-15 situated in Rusk County, Texas as described as two tracts of land in Warranty deed dated August 3rd, 1977 executed by Velma Hinze, a widow to Maline Parrott Young filed May 21st, 1981 and recorded in Volume 1208, page 203 of the Deed Records in Rusk County, Texas. Save and except 1 acre conveyed to Jim Neal Young.

Jim filed for divorce from Mary on August 14, 2017, in the CCL. During the divorce proceeding, Jim filed a sworn inventory and appraisement, claiming that the Property was his separate property pursuant to the April 4, 1988, deed from Velma Hinze.[4] In the inventory, Jim swore that other assets, including various tracts of real property, were assets of the Trust being "[h]eld for the [b]enefit of Jim Neal Young as a [b]eneficiary." However, the list of Trust property did not include the Property.

On August 7, 2018, Jim and Mary reached a mediated settlement agreement. Two months later, pursuant to and merging with the mediated settlement agreement, the CCL divided Jim and Mary's property, entered a final decree of divorce ordering the Property to be sold, and specified how the proceeds of the sale would be distributed. Jim did not appeal from the divorce degree.

On September 19, 2019, Jim appointed his son, Seth Young, as substitute trustee of the Trust. About a month later, the CCL appointed a receiver for enforcement to receive, manage, control, and sell the Property. A substitute receiver for enforcement, Dana C. King, was appointed on May 12, 2020. Pursuant to the divorce decree, the Property and a twenty-foot access easement were sold in April 2021 to Blake and Julie Bergstrom. King, as receiver for Jim and Mary, conveyed the Property to the Bergstroms via special warranty deed. The Property was legally described as follows:

> All that certain 1.000 acre tract or parcel of land in the T.J. Jackson Survey, A-15, Rusk County, Texas and being a part of a called 62.5 acre tract described deed from Annie Maline Young to Young Family Trust dated September 22, 2005 and recorded in Volume 2594, Page 558 of the Deed Records of Rusk County Texas;

---

[4]In the inventory, Jim asserted that, on April 4, 1988, the Property was "given to [Jim Young] by his mother."

said 62.5 acre tract described as a called 25 acre tract and a called 37-1/2 acre tract described in deed from Velma Hinze to Maline Parrott Young dated January 2, 1957[5] and recorded in Volume 1208, Page 203 of said Deed Records, said 1.000 acre tract more particularly described as follows:

COMMENCING at a ½ inch iron rod found at the SWC of said 25 acre tract;

THENCE N 29º 50' 26" E, across said 25 acre tract, 1100.67 feet to a ½ inch iron rod set at the POINT OF BEGINNING of this herein described 1.000 acre tract;

THENCE N 46º 32' 54" E, across said 25 acre tract and 37-1/2 acre tract, 208.71 feet to a ½ inch iron rod (set) from which a ½ inch iron rod found on the EBL of said 37-1/2 acre tract on the south margin of Rusk County Road (CR) 311 bears N 35º 54' 59" E 1102.48 feet;

THENCE S 43º 39' 34" E 208.71 feet to a ½ inch iron rod (set);

THENCE S 46º 32' 54" W 208.71 feet to a ½ inch iron rod (set) from which a 24 inch twin Sweet Gum found an interior ell corner of said 37-1/2 acre tract bears S 02º 56' 51" W 822.89 feet;

THENCE N 43º 39' 34" W 208.71 feet to the place of beginning containing 1.000 acres of land.

The CCL entered an order confirming the sale to the Bergstroms.

Jim refused to leave the Property, and on August 5, 2021, the CCL ordered that the Property be vacated at or before 9:00 a.m. on August 11, 2021, or else Jim would be subject to findings of contempt. On August 19, 2021, the CCL issued an order to show cause why Jim, Seth, Michael Young, Hannah Davis, and "other occupants" should not be held in contempt for failing and refusing to vacate the Property.

On September 30, 2021, Seth, as substitute trustee, filed a trespass to try title and quiet title lawsuit in the 4th Judicial District Court of Rusk County against Jim, Mary, and the court-

---

[5]The deed from Velma Hinze to Maline Parrott Young referenced in the description as being recorded at volume 1208, page 203, of the deed records of Rusk County is dated August 3, 1977.

appointed receiver, King. In the lawsuit, Seth claimed that, despite the divorce decree and the sale of the Property pursuant to the decree, the Trust was the rightful owner of the Property. The Bergstroms intervened in the suit and moved for summary judgment, arguing that the Trust was barred by res judicata and collateral estoppel from challenging the divorce decree's adjudication of title. The trial court granted the Bergstroms' motion for summary judgment without specifying the grounds. The Trust appealed.

## II. Standard of Review

"The grant of a trial court's summary judgment is subject to de novo review by appellate courts." *Brown v. CitiMortgage, Inc.*, No. 06-14-00105-CV, 2015 WL 2437519, at *2 (Tex. App.—Texarkana May 22, 2015, no pet.) (mem. op.) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). "In making the required review, we deem as true all evidence which is favorable to the nonmovant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the nonmovant's favor." *Id.* (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). "When the trial court does not specify the basis for its ruling, we must affirm a summary judgment if any of the grounds on which judgment is sought are meritorious." *Id.* (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

"To be entitled to traditional summary judgment, a movant must establish that there is no genuine issue of material fact so that the movant is entitled to judgment as a matter of law." *Id.* (citing TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009)). "Once the movant produces evidence entitling it to summary

judgment, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact." *Id.* (citing *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996)). "A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim." *Id.* (citing *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508–09 (Tex. 2010)).

## III.    Res Judicata

The Bergstroms sought summary judgment based on res judicata and collateral estoppel. Because it is dispositive, we first address whether the Trust's claim was barred by res judicata.

Res judicata, or claim preclusion, precludes relitigating claims that have been finally adjudicated or that arise out of the same subject matter and could have been raised and litigated in the prior action. *Hallco Tex., Inc. v. McMullen Cnty.*, 221 S.W.3d 50, 58 (Tex. 2006). The doctrine is necessary to "bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). "[A] final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose." *Barr v. Resol. Tr. Corp.*, 837 S.W.2d 627, 631 (Tex. 1992). The doctrine of res judicata "applies to the property division in a final divorce decree, just as it does to any other final judgment, barring subsequent collateral attack even if the divorce decree improperly divided the property." *DeAcetis v. Whitley*, No 14-08-00429-CV, 2010 WL 1077904, at *3 (Tex. App.—Houston [14th Dist.] Mar. 25, 2010, pet. denied) (mem. op.) (citing *Baxter v. Ruddle*, 794 S.W.2d 761, 762 (Tex. 1990)).

7

For res judicata to apply, there must be: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action.

*Daccach*, 217 S.W.3d at 449 (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). The party asserting the defense of res judicata has the burden of proving each element of the defense. TEX. R. CIV. P. 94; *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Here, the parties agree that the first element is met. However, the Trust contends that the trial court erred in finding that its claims were barred by res judicata because (1) it was neither a party to the divorce action, nor was it in privity with a party to the divorce action, and (2) its claims to ownership of the Property could not have been raised in the divorce action.

It is undisputed that Jim and Mary were the named parties to the divorce action and that the Trust was not a named party to the divorce action. Therefore, we turn to the issue of whether the Trust was in privity with Jim at the time of the divorce proceeding.

Non-parties can be bound by a prior suit if they were in privity with a party. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). "Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right." *Tex. Cap. Sec. Mgmt., Inc. v. Sandefer*, 80 S.W.3d 260, 265 (Tex. App.—Texarkana 2002, pet. struck) (citing *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971)). Because there is no generally prevailing definition of privity applicable to all res judicata cases, "the determination of who are privies requires careful examination into the circumstances of each case." *Benson v. Wanda Petroleum Co.*, 468 S.W.2d 361, 363 (Tex. 1971). Merely being interested in the same question or in proving the same facts

8

does not establish privity. *Burchfield v. Prosperity Bank*, 408 S.W.3d 542, 547 (Tex. App.—Houston [1st Dist.] 2013, no pet.). However, parties are generally in privity when "(1) they control an action even if they are not parties to it; (2) their interests are represented by a party to the action; or (3) they are successors in interest, deriving their claims through a party to the prior action." *HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 890 (Tex. 1998) (citing *Benson*, 468 S.W.2d at 362). To determine whether res judicata bars a subsequent suit, we examine the circumstances of each case to identify any interests the parties may share. *See Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800–01 (Tex. 1992).

Where a person's individual participation in a prior action shares an identity of interest with a second action, the second action will be precluded by res judicata, even though the second action was brought by the person in his representative capacity. *See Lesikar v. Moon*, No. 01-12-00406-CV, 2014 WL 4374117, at *7–8 (Tex. App.—Houston [1st Dist.] Sept. 4, 2014, pet. denied) (mem. op. on reh'g). For example, in *Sparkman v. Kimmey*, the Tyler Court of Appeals determined that Sparkman, as substitute trustee, was in privity with Sparkman in his individual capacity where Sparkman "very clearly represented the trustee's interest in the property when he litigated the first forcible entry and detainer suit and the [subsequent] trespass to try title suit." *Sparkman v. Kimmey*, 970 S.W.2d 654, 660 (Tex. App.—Tyler 1998, pet. denied). Similarly, in *Harrell, Trustee of Sam Minchen Revocable Trust v. Stovall*, the court of appeals applied res judicata to bar Harrell's property ownership claims as trustee where she had previously litigated ownership of the property in her individual capacity. *Harrell, Tr. of Sam Minchen Revocable Tr. v. Stovall*, No. 14-18-00991-CV, 2020 WL 1922014, at *8–9 (Tex. App.—

9

Houston [14th Dist.] Apr. 21, 2020, no pet.) (mem. op.). In the first action, Harrell argued that the property in dispute was part of a probate estate because she was seeking to recover under a will that devised the estate to her. *Id.* at *3. In the second action, Harrell argued that she was proceeding as trustee of a trust, that the property at issue was owned by the trust, and that the property belonged to her son as beneficiary of the trust. *Id.* at *3–4. The court of appeals found sufficient evidence to support a finding of privity because Harrell's son was a minor at the time of the first suit, and Harrell could have asserted her son's claims to the property in the first action. The court of appeals held that Harrell was "a party to both actions because she shared an identity of interests in the basic legal right that was the subject of both actions." *Id.* at *8.

Here, we find that the Trust was in privity with Jim because they shared an identity of interests. *See Lesikar*, 2014 WL 4374117, at *7–8. At the time of the divorce proceedings, Jim was both the sole trustee and sole beneficiary of the Trust.[6] During the divorce action, Jim sought to establish ownership of the Property for his personal benefit. Even though the Trust was not a party to the divorce proceeding, Jim sought to clarify properties owned by the Trust to keep them separate from the marital estate. Therefore, Jim was representing not only his individual interests, but also the interests of the Trust.

Also, similar to the divorce action, the basic legal right of ownership of the Property, once again, is at issue in this case. *See DeAcetis*, 2010 WL 1077904, at *3. By this action, the Trust seeks to relitigate that ownership—for the benefit of its sole beneficiary, Jim. Both cases

---

[6]It is undisputed that Jim was the trustee. He became the sole beneficiary of the Trust when his brother, Dan, died intestate without living parents or issue. At the time of Dan's death, his estate vested immediately in his only sibling, Jim. *See* Act of June 1, 1981, 67th Leg., R.S., ch. 674, § 3, 1981 Tex. Gen. Laws 2536, 2537 (repealed 2009) (repeal effective 2014); Act of Mar. 17, 1955, 54th Leg., R.S., ch. 55, § 38(a)(3), 1955 Tex. Gen. Laws 88, 100 (repealed) (repeal effective 2014).

10

claim the Property for the benefit of Jim, either individually or in his capacity as sole beneficiary of the Trust. Thus, the parties share a basic legal right in the lawsuit.[7]

The Trust also contends that its claims were not raised and could not have been raised during the divorce proceeding. However, that argument is undermined by the fact that, during the divorce proceeding, Jim made sworn claims that the Trust owned various real property interests. Not only could Jim, as trustee of the Trust, have brought claims that the Trust owned real property interests, but Jim, individually, did so. Jim was in the best position to raise the claims. He had knowledge of the conveyance history of the property.[8] As trustee and sole beneficiary of the Trust, he had knowledge of the Trust assets. The character of the property was in dispute during the divorce proceeding, and Jim sought to clarify the proper owners. Thus, Jim

---

[7]In support of its argument that privity does not exist in this case, the Trust relies heavily on *In re duPont*, an unpublished master's report from Delaware. *In re Tr. FBO duPont Under Tr. Agreement Dated August 4, 1936*, C.A. No. 12904-MG, 2018 WL 4610766 (Del. Ch. Sept. 25, 2018). In *In re duPont*, a group of trustees sought instructions from the court "as to the proper distribution of the principal and income of the trust, which granted the donee a limited testamentary power of appointment." *Id.* at *1. The issue was

> whether a divorce decree incorporating a settlement agreement in which the donee agreed to exercise his power of appointment to benefit the children of his first marriage, bound the donee and the trust, or whether the donee's last will and testament, which subsequently exercised the donee's power of appointment to benefit his granddaughter from his second marriage, control[led].

*Id.* The master's report found that the divorce decree and settlement agreement did not bind the trust, as the trust was not a party to the divorce proceedings, there was no evidence that the Nevada court had jurisdiction over the trust or its beneficiaries, and the trust's interests were not aligned with those of the donee. *Id.* at *9. This case is neither binding nor persuasive. The facts and posture of the case are distinguishable from those of the present case because (1) the court was applying Nevada and Delaware law, (2) the primary issue of the case and the provisions of the trust agreement differed greatly from those in this case, (3) the trust had trustees who were not also beneficiaries, (4) neither the trustees nor the beneficiaries were parties to the original proceeding, and (5) the case did not involve a party who was both trustee and sole beneficiary of the trust at the time of the prior proceeding.

[8]The Trust also argues that, at the time of his claims during the divorce proceedings, Jim was unaware that the Trust owned the Property. However, whether acting in his capacity as trustee or as an individual, Jim was charged with knowledge of the instruments in the chain of title under which he claims ownership. *See Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982).

could have and should have raised any claims that the Trust had to the Property during the divorce proceedings.

For these reasons, we find that (1) the Trust is bound by the divorce proceeding's adjudication of ownership and (2) res judicata bars the Trust from claiming that it owns the Property in this subsequent action. As a result, we find that the trial court did not err in granting the Bergstroms' motion for summary judgment, and we overrule this point of error.

**IV**. **The Trial Court Did Not Err in Considering the Divorce Decree**

The Bergstroms included the divorce decree as part of their summary judgment evidence. The Trust argues that the trial court erred by overruling its objection to the trial court's consideration of the divorce decree because it was not authenticated.[9]

The same evidentiary standards that apply in trials also control the admissibility of evidence in summary judgment proceedings. *United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997) (per curiam). Authentication is a condition precedent to the admissibility of a document into evidence. TEX. R. EVID. 901(a). "A document is considered authentic if a sponsoring witness vouches for its authenticity or if the document meets the requirements of self-authentication." *In re G.F.O.*, 874 S.W.2d 729, 731 (Tex. App.—Houston [1st Dist.] 1994, no writ). The burden of authentication is on the proponent of the evidence. *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 903 n.5 (Tex. 2004). "Unauthenticated or unsworn documents . . . are not entitled to consideration as summary judgment evidence." *Consol. Healthcare Servs.*

---

[9]The Trust's brief initially refers to Exhibit H, which is the original petition for divorce, but its argument focuses exclusively on the divorce decree.

*v. Mainland Shopping Ctr.*, 589 S.W.3d 915, 923–24 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Llopa, Inc. v. Nagal*, 956 S.W.2d 82, 87 (Tex. App.—San Antonio 1997, pet. denied).

Here, the divorce decree attached to the Bergstroms' motion for summary judgment was certified as a "true and correct of the original" by the district clerk of Rusk County. A certified copy of such a public record is self-authenticating under Rule 902(4) of the Texas Rules of Evidence. TEX. R. EVID. 902(4). Because the divorce decree was authenticated, we overrule this point of error.

## V.  Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Dated Submitted:  November 29, 2022
Date Decided:  April 28, 2023