JOHN MARTIN AND OTHERS V. E. A. WEYMAN AND OTHERS.

On the 20th day of January, A. D. 1845, the assignee of a mortgage, of a tract of land situated in the county of Cameron, instituted proceedings against the widow and minor children of the mortgagor before a judge of the first instance of Matamoros, to foreclose the mortgage. On the 22nd day of April, 1845, the land was sold at public auction in pursuance of a decree of the said judge, and R. G. became the purchaser. The widow and the guardian *ad litem* of the minor children of the mortgagor having refused to sign an act of sale, the judge on the 23d day of March, 1846, in the name of the widow and minor children, executed an act of sale to the purchaser, R. G. On the 19th February, 1846, R. G. executed an act of sale for the same land, in the usual Mexican form of conveyancing, to F. R. : *Held*, that, as it was found that at the date of the act of sale by the judge to R. G., and the act of sale from R. G. to F. R, the land in controversy was *de facto* within the jurisdiction of the Mexican government and subject to the control of the civil authorities of the city of Matamoros, it was correctly held in the court below that by the proceedings had before the judge of the first instance, and by the acts of sale by him to R. G., and by R. G. to F. R., the title to the land was divested out of the heirs of the mortgagor and vested in F. R., the vendee of the purchaser.

It has been held in a number of cases by this court that a contract of sale of land is not by the statute required to be under seal, and whether the agreement assume the form of a bond for title or other form is not material. The signature of the vendor alone, if the contract is in other respects valid, is sufficient to pass an equitable title.

It is an elementary rule which needs no illustration, that the recitals in a contract for the sale of land are evidence against the vendor and his privies of the payment of the purchase money admitted by it. This rule applies as well to contracts for the sale of land not under seal as to those under seal.

Where the plaintiffs claimed title to land under a contract not under seal, which recited the payment of the purchase money, and the defendants who could show no legal or equitable title in themselves, urged in defence that the title was outstanding in the vendor of plaintiffs, because the recital in the contract not under seal was no evidence of the payment of the purchase money, and that there was no other proof of such payment : *held*, that the recitals in the contract were evidence of the payment of the purchase money, and the defendants were bound by the recitals in the contract, whether under seal or not under seal.

An infant with a legally appointed guardian may sue by his next friend, and it requires no particular phraseology to constitute this relationship between the infant and the party by whose aid he seeks to assert his right. Where the father, as the natural guardian of the infant, sues in that ca-

pacity, and he is recognized by the court in that character in its action, the proceedings cannot be held void for a mere technical inaccuracy in the description of the capacity in which he appears.

*Quære.* Whether evidence of *res adjudicata* in an action of trespass to try title, under our statute authorizing a second suit to be brought by the plaintiff within twelve months from the final determination of the first suit, may be presented under the plea of not guilty, or must be specially pleaded as a matter of limitation of the plaintiff's right of action ?

APPEAL from Cameron. Tried below before the Hon. E. J. Davis.

This was an action of trespass to try title, brought by John Martin and his wife, Agnes Martin, and Andrew J. Porter and his wife, Mary Porter, the appellants, against Edward A. Weyman and Jane L. Weyman, his wife, for the recovery of a tract of land situated in Cameron county, known as the Banco de Santa Rita Rancho.

The petition, in the usual form, was filed March 10th, 1855. The defendants demurred, and pleaded the general denial, not guilty, and the statute of limitations, alleging uninterrupted possession since 1834.

On the trial, it was admitted that John Stryker, the first husband of Jane L. Weyman, who afterwards intermarried with Edward A. Weyman, had a regular chain of title from the sovereignty of the soil, the government of Mexico. Both parties claimed under John Stryker. The original grant, including the land in controversy, was made on the 9th of July, 1834. John Stryker and his wife, Jane L. Stryker, afterwards Mrs. Weyman, lived upon the land, as their homestead, from 1834 to the time of his death in 1844, cultivating it as a cotton plantation. He left at his death two daughters and one son, under fourteen years of age, who remained with their mother upon the land, Mrs. Stryker accepted the inheritance with the benefit of inventory, and obtained her appointment as tutrix of her children. Charles Mayhew was appointed their curator *ad litem.*

On the 31st March, 1843, John Stryker mortgaged the land in controversy to Amelio Manoton, of the city of Matamoras, to secure the payment of $4,318 50. On the 11th of March, 1844, John Stryker died, leaving the sum of $2,993 37, unpaid of the

amount secured by the mortgage. This mortgage was assigned to Jose Maria Jiron, of the city of Matamoros, on the 7th day of October, 1844; and on the 20th day of January, 1845, Jiron instituted a suit before the judge of the first instance of the city of Matamoros, for the foreclosure of the mortgage, and obtained a judgment for said amount. On the 22d of April, 1845, the land thus mortgaged was sold at public auction for its full appraised value, and Robert Gilmore became the purchaser. An account of sale was returned to the court on the 2d day of May, 1845, and confirmed. Charles Mayhew, the curator *ad litem* of the minor children of John Stryker and Mrs. Stryker, his widow, having refused to sign a conveyance of the land after having been ordered to do so, on the 21st of March, 1846, the judge of the first instance of the district of the north, sitting at Matamoros, Mexico, decreed that the notary of the court should prepare the necessary title of the land to Robert Gilmore. On the 23d of March, 1846, the judge signed the deed with witnesses, and it was attested by the notary. On the 19th day of February, 1846, Gilmore conveyed the land to Francesco Ribolta. On the 1st day of October, 1847, Ribolta conveyed the land to Mary and Agnes Gilmore, daughters of Robert Gilmore, who were then minors and afterwards intermarried with Martin and Porter, and the latter joined them in this suit.

This case was submitted to the District Judge without the intervention of a jury. An examined copy of the proceedings had before the judge of the first instance in the application of Jiron for the foreclosure of the mortgage, the act of sale by the judge to Robert Gilmore, the deed from Gilmore to Ribolta, and the deed from him to Mary and Agnes Gilmore, in the usual Mexican form not under seal, were read in evidence. The defendants objected to the introduction of these documents in evidence, on the grounds that they were not competent evidence in the suit; that the proceedings were had in a court not having jurisdiction of the subject matter; and that the proceedings were not final at the time the jurisdiction of the State of Texas was extended to the Rio Grande. Objections overruled.

The defendants introduced in evidence a petition filed by Agnes

Martin v. Weyman.

Gilmore and Mary Gilmore, minor children of Robert Gilmore, who sued as their father and natural guardian, against Edward A. Weyman and Jane L. Weyman, for the recovery of the tract of land in question. The petition was filed the 8th day of September, 1848, in the District Court of Cameron County, and in the usual form of an action of trespass to try title. They also read an order of the court, in which the suggestion of the death of Robert Gilmore is recited, appointing Israel B. Bigelow, guardian *ad litem* of Mary and Agnes Gilmore; and also an entry of the judgment of the court, reciting a verdict for the defendants, and judgment rendered for them on the 11th day of October, 1849. The remainder of the proceedings in this suit, being lost, were not offered in evidence, nor was there any effort to prove the contents of the missing papers. On the 25th of March, 1857, a judgment for defendants was rendered in the present suit. On the 28th March, 1857, the court made the following order:

"The papers in the case of Agnes and Mary Gilmore v. E. A. Weyman and wife, No. 10, having been found after judgment herein, on motion of defendants herein, it is ordered that a copy of the pleadings in said suit as well as the appeal bond, statement of facts, bills of exceptions, agreement of facts and depositions, be made a part of the record in this case, when sent up to the Supreme Court, and that the clerk do make the same a part of said transcript;" to which order the plaintiffs' counsel excepted.

All these proceedings were included in the transcript certified to the Supreme Court.

It was admitted that the United States flag was raised on the north bank of the Rio Grande on the 22d day of March, 1846.

Evidence under the plea of limitation introduced, but not noticed by the court.

*Bigelow* and *Powers*, for appellants.

*Allen* and *Hale*, for appellees. The defendants excepted to the admission by the court of the documentary chain of title of the plaintiffs, on the grounds that they were not competent; that the Matamoros court had no jurisdiction, and that the jurisdiction of

Texas extended to the Rio Grande. The defendants also proved, upon the trial, that the American flag was raised upon the bank of the Rio Grande, on March 21st or 22d, 1846. The defendants also proved a direct descent from Salvador de la Garza, the original grantee of the land, to the grantor of Stryker, and an act of the legislature of Texas, passed Feb. 10, 1852, confirming the grant. The decision of the court below rested mainly upon the ground that the act of sale from Ribolta to Inez and Mary Gilmore was not sufficient, (being not in conformity to the laws of Texas,) to pass the title to the land; but, of course, the whole case is open here.

The counsel for the appellees rely upon the following positions and authorities: 1st. The act of sale from Ribolta to Inez and Mary Gilmore, made on the 21st October, 1847, and, after the military occupation of the territory by the American army, must depend for its validity on the laws of Texas. And although the want of a seal might not be fatal, and it might still show an equitable title, if there was proof of the payment of the purchase money; still without such proof *aliunde*, the mere act of sale did not vest a right on which suit could be brought. (Miller v. Alexander, 8 Tex., 36; Youst *et al* v. Martin, 3 Serg. and R., 432; Rebler v. Reading, 8 Serg. and R., 496.

And the acknowledgment of the receipt of the money, contained in the act of sale, is not proof of the fact as to third parties, even by the Spanish law. (Hermosilla in leg. Part., p, 89, no. 37, and seq.; 1 Greenl. Ev., 23, note 1.)

2nd. The act of the sale made by the judge of the first instance, on the 21st March, 1846, when the American army had possession of the territory, is invalid, because it must derive all its efficacy from the law, not being the act of the parties assumed to be barred; and by the laws of Texas, then in force, such a deed could not be made by a foreign court. (Oakey v. Bennett, 11 How., 33.)

3d. The title of the plaintiffs must, therefore, depend upon the sale to Gilmore, at the public auction sale of the property, and upon proof of the descent of the plaintiffs from Gilmore; but there is no proof of Gilmore's death, or of descent. And even then, the legal or equitable title would not vest in Gilmore, for he had

not paid the whole of the purchase money. (See cases above cited; and also see Peck v. Benigs, 10 La. An., 160.)

5th. The former judgment in an action of trespass to try title for the same land, brought by the same plaintiffs against the same defendants, must be regarded as conclusive, and may be introduced in evidence without having been pleaded. (1 Greenleaf Ev., p. 531.) And although a judgment in ejectment at common law was not conclusive, still it is so in our action of trespass to try title. (Fisk v. Miller, 20 Tex., 572.) And the privilege granted to the plaintiff of bringing a new suit within a year is an exception to the general rule, and it is for the plaintiff to make out the exception, by showing that he has brought the second suit within the time limited. (Hart. Dig. art. 3226.)

MOORE, J. It was decided by this court in the case of Trevino v. Fernandez, 13 Tex., 630, that "the acts of the Mexican authorities in the territory adjacent to the Rio Grande, while that territory remained *de facto* under their control, although subsequent to the declaration of her boundary by the Republic of Texas, in the ordinary administration of her laws and municipal affairs, so far as individuals are concerned, were as valid and binding as if done by the government *de jure* as well as *de facto.*" And as the court found, a jury having been waived, that at the date of the conveyance by the judge of the first instance to Gilmore, and the act of sale from him to Ribolta, the land in controversy was *de facto* within the jurisdiction of the Mexican government, and subject to the control of the civil authorities of the city of Matamoros, it was correctly held, that by the proceedings had before said judge of the first instance, and the act of sale by him to Gilmore, and from Gilmore to Ribolta, the title to the land was divested out of the heirs of John Stryker and vested in Ribolta. And if the rulings of the court in other particulars were correct, the plaintiffs were entitled to recover the land, unless they failed to show as between themselves and Ribolta that the title of the latter had vested in them. In other words, the defendants having no title, but, in the aspect of the case we are now contemplating, relying upon the outstanding title in Ribolta, could stand in no better position than he would if he were present in court resisting

30

the plaintiffs' title. The plaintiffs relied upon an instrument of like character, and executed with the same solemnities by Ribolta as that by which the land was conveyed to him; but the court held that this was insufficient to pass the title, upon the ground that at the date of its execution the land was within the *de facto*, as well as *de jure* jurisdiction of the State of Texas; and that by the act concerning conveyances of February 5th, 1840, the act of sale upon which the plaintiffs relied, was ineffectual to pass the legal title for want of a seal. Whether this is the necessary construction of said act, it is unnecessary for us now to enquire. It has been held in a number of cases by this court, (see Miller v. Alexander, 8 Tex., 36; Holman v. Criswell, 13 Tex., 38; Fisk v. Miller, Ib., 224;) that a contract for the sale of land is not, by the statute, required to be under seal; and whether the agreement assume the form of a bond for title, or other form, is immaterial. The signature of the vendor alone, if the contract is in other respects valid, is sufficient to pass an equitable title.

The court below, however, did not question that an equitable title would authorize a recovery in this character of action, and that a title could be created by an instrument not under seal; but it held, that the act of sale relied upon by the plaintiffs did not have this effect for want of proof, independent of the recitals in it, of the payment of the purchase money. This, however, is manifestly erroneous. If the acknowledgment of the vendor in the contract of the receipt of the purchase money is not evidence of the fact unless under seal, it is evident all such contracts would be void for want of a consideration, unless aided by parol testimony. It is, however, an elementary rule, which needs no illustration, that the recitals of a contract for the sale of land, are evidence against the vendor and his privies, of the payment of the purchase money admitted by it. And as we have said, when the defendant can show no legal or equitable title in himself, but relies upon the title of the plaintiff's vendor, he, as a necessary consequence, is bound by the recitals of his contract.

The defendants, however, also relied, as a bar to the plaintiffs' right to recover, upon a judgment of the District Court of Cameron county, in a suit brought by the plaintiffs by their father, as

their natural guardian, against the defendants for the recovery of the land for which they are now suing. The record shows that a judgment was rendered in this case in favor of the defendants more than twelve months before the institution of the present suit. But from that part of the record introduced in evidence upon the trial of this case, the court cannot say that the former suit was an adjudication upon the merits, or upon such issues as entitles the defendants to rely upon the judgment as *res adjudicata*. It is true, that after the trial in the court below, that that part of the papers of the former case that were not offered in evidence, were found, and upon motion of the defendants, the court below ordered them to be included in the transcript; and from these it appears that there was an issue upon the merits in said former suit. But it is very evident, that these papers properly form no part of the record in this case, and that we cannot look to them for any purpose. If upon the trial, a part of the papers belonging to the former suit were lost, it was necessary for the defendants, after showing this fact, to have proved their contents, so that the court could know upon what issues the former judgment was rendered, before they could avail themselves of it, as a bar to the plaintiffs' right of recovery in this suit. Without therefore discussing the other objections taken by the plaintiffs, we hold that the court erred in admitting as evidence the former judgment relied upon by the defendants, without their having shown by the answer, or otherwise, the issue upon which it was rendered. In the attitude in which the case now stands, a judgment cannot be given for the defendants; but if the court below had not admitted the former judgment without the production of the defendants' answer, or proof of its contents, this might have been supplied by proper evidence. It is necessary, therefore, that we shall enquire whether the court erred in the legal effect of the former suit, for upon this it will depend whether a judgment shall be rendered in this court for the plaintiffs, or the case shall be remanded. Although the court admitted the former judgment in evidence, and seems to have regarded it with that part of the record before it, as *prima facie* evidence, at least, of an adjudication upon the merits of the matter now in controversy, yet upon the final hearing it held the judg-

ment void, because the suit was commenced by the plaintiffs by their father as their natural guardian, and after his death was continued by the appointment by the court of a guardian *ad litem* for them. In this, we think the court was governed more by technical terms than sound legal principles. An infant without a legally appointed guardian, as was the case with the plaintiffs, may sue by his next friend. And surely in our courts it cannot be insisted, that it requires any particular technical phraseology to constitute this relationship between the infant and the party by whose aid he seeks to assert his rights. It is very evident, from the language of their petition, that their father placed himself before the court as their next friend, for the purpose of enabling the plaintiffs to prosecute their suit; and having been recognized by the court in this character, by its action in adjudicating upon their petition, it cannot now be held void for a mere technical inaccuracy in the description of the capacity in which he appears. The same may be said with reference to the appointment of the guardian *ad litem*, as he was called, with this addition, that this was done by the direct action of the court. The action of the next friend of a minor, is within the control of the court. It may at any time, if deemed for the interest of the minor, substitute a new party as his next friend, in place of one with whom the suit was originally commenced. (Burks v. Shain, 2 Bibb., 341; Witts v. Campbell, 12 Vesey, 492; Hardy v. Scanlin, 1 Miles, 87.)

In Brown v. Hull, 16 Verm., 673, it was held that the *next friend* is not *a party* to a suit instituted by a minor by his aid. And it has frequently been held, that a judgment in favor of, or against a minor, not represented by a guardian, or next friend, is not void, and can only be avoided by judicial proceeding. (Austin v. Charleston Female Seminary, 8 Met., 186; Porter v. Robinson, 3 A. K., Marshall, 253.)

Whether the present suit was commenced within twelve months from the removal of the disability of minority from the plaintiffs, is not shown by the evidence now before the court. And we will not now undertake to determine upon which party the burthen of showing this rests, if such is the fact. Nor do we, in the present attitude of the case, and without a fuller argument on the point,

feel called upon to determine whether evidence of *res adjudicata*, in an action of trespass to try title under our statute, authorizing a second suit to be brought by the plaintiff within twelve months from the final determination of the first one, may be presented under the plea of "not guilty," or must be specially pleaded as a matter in limitation of the plaintiff's right of action.

The judgment is reversed, and the cause remanded.

Reversed and remanded.