Gloria Soto ARIAS, et al., Appellants,

v.

Gilbert KERLIN, Individually, Gilbert Kerlin, Trustee, North Central Oil and Gas Corporation and PI Corporation, Appellees.

No. 13–03–364–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Jan. 5, 2006.

Von H. Shelton, Angleton, for Appellant.

Russell H. McMains, Law Offices of Russell H. McMains, Corpus Christi, Horacio L. Barrera, Martinez & Barerra, Brownsville, M. Steve Smith, Houston, for Appellees.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and GARZA.

## MEMORANDUM OPINION

Opinion by Chief Justice VALDEZ.

Appellants, descendants of Jesus Balli, appeal from the trial court's entry of final judgment based on a motion for summary

judgment in favor of appellees, Gilbert Kerlin, individually and as trustee, and PI Corporation (collectively, "Kerlin"). We reverse and remand.

## Background

This suit involves the disputed ownership of Padre Island in Texas. In 1827, the Mexican government granted the island to Padre Nicolas Balli and his nephew. After Padre Balli's death, his interest in the island passed by devise (i.e., through his will) to various nieces and nephews. The three children of Francisco Balli Trevino (Jesus Balli, Francisco Maria Balli, and Paula Balli) were among the heirs who acquired interests in the island. According to appellants, Jesus' interest consisted of "1/6 of 5½ leagues and 3 caballarias fee simple interest in Padre Island."

In 1847, Jesus' father, Francisco, allegedly conveyed his children's interest in the island to Nicolas Grisanti. This conveyance is recorded in a "Tutor's Deed." In turn, Grisanti conveyed the island to another party, beginning a chain of title transfers that ultimately culminated with the ownership of Grisanti's interest being held by Kerlin.

Appellants claim that in 1999, they discovered that the 1847 Tutor's Deed was in fact fraudulent and ineffective to convey title because Jesus was twenty-two years old and married at the time of the conveyance and was therefore not a minor, which meant that his father could not lawfully enter into a tutor's deed on his behalf or sell property belonging to Jesus. As the deed was ineffective, Jesus' 1/6th interest in Padre Island was never conveyed and therefore ultimately passed to appellants as his descendants.

Following this discovery, appellants filed suit against Kerlin, alleging claims of trespass, trespass to try title, conversion, constructive trust, and fraud. They also sought to have the 1847 Tutor's Deed declared void. Kerlin responded by filing a motion for summary judgment in which he made the following arguments: (1) Jesus Balli sold his interest in the 1847 Tutor's Deed; (2) Texas courts are required to recognize the authority of the Mexican court's decree authorizing the sale; (3) *State v. Balli* bars this claim because of stare decisis; (4) the descendants of Jesus Balli settled in *Havre v. Dunn,* which is res judicata of appellants' claims; and (5) *U.S. v. 34,844 Acres* also bars appellants' claims under res judicata and collateral estoppel. The trial court granted Kerlin's motion without specifying which ground it relied upon. It then entered a final judgment against appellants based on its decision on the motion for summary judgment.

Appellants appealed the judgment to this Court on each of the five grounds raised in Kerlin's motion for summary judgment.

## Summary Judgment

The propriety of a summary judgment is a question of law; therefore, an appellate court reviews the trial court's granting of summary judgment de novo. *Natividad v. Alexsis, Inc.,* 875 S.W.2d 695, 699 (Tex.1994); *see Ortega v. City Nat'l Bank,* 97 S.W.3d 765, 771–72 (Tex.App.-Corpus Christi 2003, no pet.); *Mobil Producing Tex. & N.M. v. Cantor,* 93 S.W.3d 916, 918 (Tex.App.-Corpus Christi 2002, no pet.). Summary judgment will only issue when the movant has shown the right to summary judgment as a matter of law. *Gibbs v. Gen. Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). The summary judgment proof must establish, as a matter of law, that there is no genuine issue of fact concerning one or more of the essential elements of the plaintiff's cause of action or the defendant's affirmative defenses. *See Herrmann & Andreas Ins. Agency, Inc. v.*

*Appling,* 800 S.W.2d 312, 315 (Tex.App.-Corpus Christi 1990, no writ). In deciding whether there is a genuine issue of material fact, evidence favorable to the non-movant will be taken as true, and all reasonable inferences made, and all doubts resolved, in its favor. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997).

### Tutor's Deed

■ In Kerlin's first ground for summary judgment, he argues that Jesus Balli's interest in the land was transferred to Grisanti through the Tutor's Deed. Specifically, Kerlin argues that the Tutor's Deed transferred Jesus' interests because under Mexican law at the time, Jesus was considered a minor and thus could not properly transfer his own interest in property. Thus, Kerlin argues, it was valid for Jesus' father to transfer his son's interest in the property. In the alternative, Kerlin adds, Jesus himself validated the sale by signing the Tutor's Deed, which effectively conveyed the property regardless of his minority.

Appellants counter that questions of fact exist as to whether Jesus' father could properly convey away his son's interests given that Jesus was legally an adult at the time of the Tutor's Deed due to both his age and his marriage to Isabel Trevino the year before the Tutor's Deed was signed. Furthermore, they allege, the deed was fraudulent and false.[1] Jesus' age and marital status are important in determining which country's law controls the Tutor's Deed. According to both parties, under Mexican law at the time, a male remained a minor until he either reached the age of twenty-five or married, while under American law at the time, a male became an adult who could legally enter into binding contracts and dispose of his own property at the age of twenty-one.

We first note that Kerlin fails to attach or otherwise provide a copy of the Tutor's Deed which is the ground for his summary judgment motion. The only evidence of the deed is a copy of a translation of the deed. Kerlin also provides no evidence of Jesus' age or marital status at the time of the deed signing.

Appellants assert that the deed was "false" and "fraudulent," claims which Kerlin fails to respond to whatsoever in his motion for summary judgment. Futhermore, appellants argue that Francisco could not enter into a Tutor's Deed on behalf of Jesus because Jesus was married before the deed was signed, thus making Jesus an adult in the eyes of Mexican law at the time, regardless of his age. Again, Kerlin wholly fails to respond to this claim and does not dispute that marriage would render Jesus a legal adult. Thus, construing the pleadings in the light most favorable to appellants, as we are bound to do under the standard of review for summary judgments, *see Grinnell,* 951 S.W.2d at 425, we conclude that material issues of fact remain unresolved and thus summary

---

1. Kerlin alleges in his appellate brief that "In any event, the fact that Jesus Balli signed the deed is undisputed on this appeal." We disagree; appellants repeatedly refer to the deed as "false" and "fraudulent," implying that no part of the deed, including the signature of Jesus, can be considered valid. Furthermore, in a motion for summary judgment, all doubts must be resolved in the nonmovant's favor. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). Here, Kerlin failed to provide any evidence regarding Jesus' signature; instead of attaching a copy of the signed Tutor's Deed itself to his motion for summary judgment, he provided a copy of a translation of the deed, which did not include any signatures. Resolving all doubts in appellant's favor, we conclude there is a genuine issue of material fact unresolved as to whether the deed was signed by Jesus, given the dispute over Jesus' status as a minor and the absence of the signature on the deed itself as evidence.

judgment could not be granted in favor of Kerlin on this ground.

### Mexican Court Decree

■ In connection with the first issue, Kerlin argues that the Mexican court decree validating the Tutor's Deed should control because Mexico still had jurisdiction over the area at the time, and principles of comity dictate that this court must defer to its decision. Appellants contend that because American troops had possession of Padre Island at the time of the conveyance, the Mexican courts that recognized the Tutor's Deed had no authority to dispose of any interest in Padre Island.

The Tutor's Deed was allegedly signed by the parties on March 17, 1847, in Matamoros, Mexico, and confirmed by a Mexican governmental decree. However, by late 1845, Texas had joined the United States, and American soldiers began occupation of the border area, including Padre Island, while the exact boundary between Texas and Mexico remained in dispute. *See State v. Balli*, 173 S.W.2d 522, 526 (Tex.Civ.App.-San Antonio 1943), *aff'd*, 144 Tex. 195, 190 S.W.2d 71 (1944). The Texas Supreme Court has noted that it never intimated that "the Mexican government had authority to grant lands in Texas north or east of the Rio Grande after the signing of the Treaty of Guadalupe Hidalgo [signed in 1848], or for that matter, after it lost its de jure jurisdiction in 1836." *Kenedy Pasture Co. v. State*, 111 Tex. 200, 231 S.W. 683, 692 (1921). In fact, the rule in this State is "title to lands within the original Mexican state of Tamaulipas and the present boundaries of Texas, that was good as against the Mexican government on December 19, 1836, is within the protection of the treaty and entitled to recognition in the courts." *Balli*, 173 S.W.2d at 536. Title to land in Texas that was acknowledged by the Mexi-

can government *after* the December 19, 1836 date is accordingly not given such automatic deference and recognition.

Kerlin argues that, "by the Treaty of Guadalupe Hidalgo, ratified on the 30th day of May 1848, Mexico acknowledged the Rio Grande as the boundary between Mexico and the United States. The jurisdiction of the Mexican State of Tamaulipas over the premises in dispute did not cease until then." Given the statements made by the Texas courts in *Kenedy Pasture Co.* and *Balli*, which imply that the Mexican government lacked jurisdiction at the time the deed was signed, we do not think the question of when Mexican jurisdiction over Padre Island ceased can be so easily answered at this stage in the proceedings simply by reference to the Treaty of Guadalupe Hidalgo, which formally ended hostilities.

Kerlin also argues that *Martin v. Weyman*, 26 Tex. 460, 465 (Tex.1863), confirms his assertion that the Mexican court still had jurisdiction over the lands in dispute when it authorized and confirmed the sale. We disagree; *Martin* involves a different tract of land along the disputed border area. *See id.* Furthermore, *Martin* implies that the question of which country retained de facto jurisdiction over land lying in the border areas during this era is a fact issue to be decided in trial: "the court found, a jury having been waived, that at the date of the conveyance . . ., the land in controversy was de facto within the jurisdiction of the Mexican government, and subject to the control of the civil authorities of the city of Matamoros." *Id.* Finally, the opinion notes that "It was admitted that the United States flag was raised on the north bank of the Rio Grande on the 22d day of March, 1846." *Id.* at 464. Thus, *Martin*, at most, can be used to support an assertion that the determination of which country had jurisdic-

tion to authorize the sale of Padre Island is a fact issue to be resolved on a case-by-case basis, and, at least, can be used in support of the proposition that a deed signed after "the United States flag was raised" would fall under "the de facto as well as de jure jurisdiction" of the state of Texas. *Id.* at 466. It is unknown when the U.S. flag was officially raised on Padre Island, although American troops had been occupying the island since 1845.

The uncertainty of the time was in fact reflected in the language of the Tutor's Deed itself, which at several points includes the following language:

> [Francisco] believes that the proposed sale of the share of pasture land of the Island of Corpus Christi belonging to his minor children ... is advantageous to the parties aforesaid, but he understands that in addition it is made necessary by the state of war in which Mexico is found with the United States, who if they should unfortunately arrive at the consummation of their usurpation of the Department of Texas with the boundaries which they have fixed down to the Rio Bravo [Rio Grande], it is to be expected that they will not respect the title of the proprietors in said share of pasture land, these remaining in consequence dispossessed of it, which will not happen if in time they secure its value by means of the sale now proposed.

Neither party has, at this point, conclusively established which nation exercised jurisdiction over Padre Island. The original parties themselves seemed uncertain as to their ability to effectively convey the land under the authority of the Mexican government. While the principle of comity would typically dictate that Texas should honor the decrees of the Mexican courts, *see Forum Ins. Co. v. Bristol–Myers Squibb Co.*, 929 S.W.2d 114, 118 (Tex.App.-Beaumont 1996, writ denied), the principle does not extend so far as to force Texas courts to recognize decrees and orders that the Mexican court had no jurisdiction to render. Given that Texas courts have held the Mexican government was divested of its jurisdiction over the disputed area possibly as early as 1836 and at least by 1845 or 1848, the Mexican court affirming the transfer of Padre Island in 1847 was most likely without jurisdiction over the property involved. In any case, Kerlin has not provided sufficient evidence that the Mexican government retained jurisdiction over the land in dispute, and summary judgment could not be granted in his favor on this ground.

### State v. Balli

◼ Kerlin argues as his third ground for summary judgment that the decision in *State v. Balli* bars appellants' suit by operation of the doctrine of stare decisis. He argues that in that opinion, the Texas supreme court decided that Francisco Balli had sold all of his children's interest in Padre Island. Appellants disagree that *Balli* dealt with an identical question of law as is presented in their case.

◼ The doctrine of stare decisis governs only the determination of questions of law and its observance does not depend upon identity of parties. *Swilley v. McCain*, 374 S.W.2d 871, 875 (Tex.1964). After a principle, rule, or proposition of law has been squarely decided by the supreme court, the decision is accepted as a binding precedent by courts of lower rank when the very point is again presented in a subsequent suit between different parties. *Id.; see Lubbock County v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex.2002). As a general rule, however, the determination of a disputed issue of fact is not conclusive under the doctrine of stare decisis, when the same issue later arises in another case between persons

who are strangers to the record in the first suit. *Swilley*, 374 S.W.2d at 875.

The statement in the *Balli* opinion that Kerlin claims acts to bar this claim is the following, included in a list of various conveyances involving Balli family land in south Texas: "Francisco Balli, as the father and guardian of his children, conveyed to Nicolas Grisante their interests, to whom the priest had devised one-seventh of one-half of Padre Island as the children of said Francisco Balli." *Balli*, 190 S.W.2d at 81. The question of law actually decided in the *Balli* case was whether the State of Texas could secure for itself the title and possession of Padre Island. *See id.* at 73. Thus, the issue of the validity of Francisco's conveyance to Grisanti on behalf of his children was never an issue of law squarely presented to and decided by the supreme court and thus, remains an issue open for dispute and determination by this court. *See Swilley*, 374 S.W.2d at 875. Stare decisis is inapplicable and we conclude summary judgment could not be granted on this ground.

### *Havre v. Dunn*

■ Kerlin argues as his fourth ground for summary judgment that the descendants of Jesus Balli already settled in *Havre v. Dunn*, No. 12469 (103rd Dist. Ct., Cameron County, June 9, 1928), which is res judicata of their claims here.

■ Res judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). For the doctrine of res judicata to bar further litigation of a claim, there must be proof of the following: (1) the existence of a prior final judgment on the merits by a court of competent jurisdiction, (2) the

identity of parties or those in privity with them, and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996). A party asserting the doctrine of res judicata as a defense has the burden of establishing evidence that proves it applies, which includes the judgment and pleadings from the previous suit, or the doctrine will not apply. *See Scurlock Oil Co. v. Smithwick*, 787 S.W.2d 560, 562 (Tex.App.-Corpus Christi 1990, no writ); *see also Jones v. City of Houston*, 907 S.W.2d 871, 874 (Tex.App.-Houston [1st Dist.] 1995, writ denied).

In this case, Kerlin included only the judgment, and not the pleadings, from *Havre v. Dunn* when asserting his res judicata defense. In the interests of justice, however, and given the age of the *Havre* opinion, we will consider the merits of his claim despite the absence of the *Havre* pleadings. *See Tex. Capital Secs. Mgmt. v. Sandefer*, 80 S.W.3d 260, 265 (Tex.App.-Texarkana 2002, no pet.).

Kerlin relies on the following statement made in *Havre v. Dunn*:

[T]he descendants and surviving and only heirs of Jesus Balli ... announced in open court that pending the trials of this suit the defendants Sam A. Robertson and W.E. Callahan have acquired by purchase, for the sum of Fifteen Hundred ($1500.00) Dollars, all and singular each and every interest, claim and demand which said defendants above named as descendants of said Jesus Balli and his brother and sister, have or claim in or to the lands and premises in controversy in this suit.

Kerlin, however, was not involved in the *Havre* case on either side; according to the allegations of appellants, Kerlin initially became involved with the Balli family in

1938, ten years after the *Havre* case was decided, when he sought to re-open the suit in order to obtain his own property on Padre Island through the acquisition of interests of various Balli family members.

Several years after the *Havre* case was decided, the judge granted a motion for new trial; however, before the new trial was held, he retired and his order for a new trial was rescinded by his successor judge. The rescission was appealed and the court of civil appeals held that the successor judge had erred in rescinding the order granting the new trial. *See Staples v. Callahan,* 138 S.W.2d 206, 208 (Tex. Civ.App.-San Antonio 1940), *aff'd, Callahan v. Staples,* 139 Tex. 8, 161 S.W.2d 489 (1942). The supreme court affirmed, *see id.,* but this new trial was apparently never held. *See Sauceda v. Kerlin,* 164 S.W.3d 892, 906–07 (Tex.App.-Corpus Christi 2005, pet. granted).

Given that the Texas Supreme Court has affirmed a decision mandating a new trial in the *Havre* case, we are reluctant to apply the doctrine of res judicata to any legal holding emanating from the original decision. *See Amstadt v. U.S. Brass Corp.,* 919 S.W.2d at 652 (requiring there be a final judgment on the merits in order for res judicata to bar a claim). Furthermore, there is no identity of the parties; Kerlin was not involved whatsoever in the *Havre* case when it was first handed down. Once he became involved in the rehearing issue some ten years later, he apparently was attempting to assert claims *on behalf of*—not adverse to—the Balli family. *See id.* Finally, the claims asserted by appellants (i.e., that Kerlin committed trespass, conversion, and fraud against them) were not claims raised in the first action. *See id.* We in fact find it both troubling and offensive that Kerlin, who became involved in the litigation by seeking to reverse the effects of the *Havre* decision against the

Ballis, would now turn around and use the *Havre* decision offensively against the same Balli family. *See Mulvey v. Mobil Producing Tex. & N.M. Inc.,* 147 S.W.3d 594, 607–08 (Tex.App.-Corpus Christi 2004, pet. denied) (discussing quasi-estoppel and unconsionability).

### U.S. v. 34,884 Acres

Kerlin argues as his fifth ground for summary judgment that the decision in *U.S. v. 34,884 Acres,* No. C.A. 142 (S.D.Tex.1948), *aff'd,* 182 F.2d 750 (5th Cir.1950), bars appellants' claims under the doctrines of res judicata and collateral estoppel.

■ Because *34,884 Acres* was a federal opinion now being used to bar a state court proceeding, we review this claim under the federal standards for res judicata and collateral estoppel. *See San Antonio Indep. Sch. Dist. v. McKinney,* 936 S.W.2d 279, 281 (Tex.1996). Under federal law, the doctrine of res judicata only will apply if (1) the parties in both suits are identical, (2) the prior judgment was rendered by a court of competent jurisdiction, (3) there is a final judgment on the merits, and (4) the same cause of action is involved in both cases. *Id.; see Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 718 (Tex.1990). Additionally, even if the above four requirements are established, res judicata will not apply if the federal court (1) lacked jurisdiction over the omitted state law claims, or (2) possessed jurisdiction over the omitted state law claims but would clearly have declined to exercise that jurisdiction as a matter of discretion. *McKinney,* 936 S.W.2d at 281.

■ For collateral estoppel, the rule is the same under both federal and Texas law: "[a] party seeking to assert the bar of collateral estoppel must establish that (1) the facts sought to be litigated in the

second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *John G. & Marie Stella Kenedy Mem. Found. v. Dewhurst,* 90 S.W.3d 268, 288 (Tex.2002).

In *34,884 Acres,* the United States brought suit to condemn 34,884 acres of Padre Island in order to create a bombing range. The suit named many parties as defendants, including the Balli family, as well as Kerlin, individually and in his capacity as trustee. The opinion noted that the Balli family members "appeared and answered herein by attorneys of their own selection, and have asserted divers claims, inconsistent as among themselves, to interests in and to the lands described in Plaintiff's Petition." Thus, there is no record that the specific Balli family member parties are the same in both the *34,884 Acres* case and the case before us now, as the court explicitly refers to disputed claims between various unnamed family members.

Also, the court in *34,884 Acres* noted, without distinguishing between the various claims brought by Balli family members, that "all of [their] claims are precluded and are res judicata and stare decisis by reason of the final judgment ... in that certain suit styled *Lizzie Havre et al. v. Pat F. Dunn, et al.*" We have concluded for the reasons discussed above that it would be improper and unjust to bar the current claims of the Balli family based on the preclusive effects of *Havre v. Dunn.* We therefore also decline to extend the holding of *Havre v. Dunn,* through its mention in the *34,884 Acres* decision, to appellants here, and we hold that the trial court could not have properly rendered summary judgment in favor of Kerlin on the res judicata effect of *34,884 Acres.* Furthermore, we also note that collateral estoppel cannot apply as the claims of the Jesus Balli descendants against Kerlin were not fully and fairly litigated in the *34,884 Acres* case and the parties were not cast as adversaries in that action. *See Dewhurst,* 90 S.W.3d at 288.

Thus, we conclude, the trial court could not have granted summary judgment on any of the five grounds asserted by Kerlin in his motion. We sustain appellants' five issues on appeal and reverse the judgment of the trial court.

## Conclusion

We reverse the judgment of the trial court and remand for further proceedings.