NUMBER
13-03-364-CV

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

GLORIA SOTO ARIAS,
ET AL.,                                                     Appellants,

                                                             v.

GILBERT KERLIN, INDIVIDUALLY, GILBERT KERLIN, 

TRUSTEE, NORTH CENTRAL OIL AND 

GAS
CORPORATION AND PI CORPORATION,                            Appellees.

 

 

                    On appeal from the 357th District
Court

                                       of
Cameron County, Texas.

 

 

 

                                M
E M O R A N D U M   O P I N I O N

 

     Before Chief Justice
Valdez and Justices Rodriguez and Garza

 

      Opinion by Chief
Justice Valdez

                                                            

 








Appellants, descendants of Jesus Balli, appeal from
the trial court=s entry of final judgment based on a motion for
summary judgment in favor of appellees, Gilbert Kerlin, individually and as
trustee, and PI Corporation (collectively, AKerlin@).  We reverse
and remand.

Background

This suit involves the disputed ownership of Padre
Island in Texas.  In 1827, the Mexican
government granted the island to Padre Nicolas Balli and his nephew.  After Padre Balli=s death, his interest in the island passed by devise
(i.e., through his will) to various nieces and nephews.  The three children of Francisco Balli Trevino
(Jesus Balli, Francisco Maria Balli, and Paula Balli) were among the heirs who
acquired interests in the island. 
According to appellants, Jesus= interest consisted of A1/6 of 5 2 leagues and 3 caballarias fee simple interest in
Padre Island.@  

In 1847, Jesus= father, Francisco, allegedly conveyed his children=s interest in the island to Nicolas Grisanti.  This conveyance is recorded in a ATutor=s Deed.@  In turn,
Grisanti conveyed the island to another party, beginning a chain of title transfers
that ultimately culminated with the ownership of Grisanti=s interest being held by Kerlin.  

Appellants claim that in 1999, they discovered that
the 1847 Tutor=s Deed was in fact fraudulent and ineffective to
convey title because Jesus was twenty-two years old and married at the time of
the conveyance and was therefore not a minor, which meant that his father could
not lawfully enter into a tutor=s deed on his behalf or sell property belonging to
Jesus.  As the deed was ineffective,
Jesus= 1/6th interest in Padre Island was never conveyed
and therefore ultimately passed to appellants as his descendants.     








Following this discovery, appellants filed suit
against Kerlin, alleging claims of trespass, trespass to try title, conversion,
constructive trust, and fraud.  They also
sought to have the 1847 Tutor=s Deed declared void.  Kerlin responded by filing a motion for
summary judgment in which he made the following arguments:  (1) Jesus Balli sold his interest in the 1847
Tutor=s Deed; (2) Texas courts are required to recognize
the authority of the Mexican court=s decree authorizing the sale; (3) State v. Balli
bars this claim because of stare decisis; (4) the descendants of Jesus
Balli settled in Havre v. Dunn, which is res judicata of appellants= claims; and (5) U.S. v. 34,844 Acres also
bars appellants= claims under res judicata and collateral
estoppel.  The trial court granted Kerlin=s motion without specifying which ground it relied
upon.  It then entered a final judgment
against appellants based on its decision on the motion for summary
judgment.  

Appellants appealed the judgment to this Court on
each of the five grounds raised in Kerlin=s motion for summary judgment.

Summary Judgment








The propriety of a summary judgment is a question of
law; therefore, an appellate court reviews the trial court's granting of
summary judgment de novo.  Natividad
v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); see Ortega v. City
Nat'l Bank, 97 S.W.3d 765, 771‑72 (Tex. App.BCorpus Christi 2003, no pet.); Mobil Producing
Tex. & N.M. v. Cantor, 93 S.W.3d 916, 918 (Tex. App.BCorpus Christi 2002, no pet.).  Summary judgment will only issue when the
movant has shown the right to summary judgment as a matter of law.  Gibbs v. Gen. Motors Corp., 450 S.W.2d
827, 828 (Tex. 1970).  The summary
judgment proof must establish, as a matter of law, that there is no genuine
issue of fact concerning one or more of the essential elements of the
plaintiff's cause of action or the defendant's affirmative defenses.  See Hermann & Andreas Ins. Agency,
Inc. v. Appling, 800 S.W.2d 312, 315 (Tex. App.BCorpus Christi 1990, no writ).  In deciding whether there is a genuine issue
of material fact, evidence favorable to the nonmovant will be taken as true,
and all reasonable inferences made, and all doubts resolved, in its favor. Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). 

Tutor=s Deed

In Kerlin=s first ground for summary judgment, he argues that
Jesus Balli=s interest in the land was transferred to Grisanti
through the Tutor=s Deed. 
Specifically, Kerlin argues that the Tutor=s Deed
transferred Jesus= interests because under Mexican law at the time,
Jesus was considered a minor and thus could not properly transfer his own
interest in property.  Thus, Kerlin
argues, it was valid for Jesus= father to transfer his son=s interest in the property.  In the alternative, Kerlin adds, Jesus
himself validated the sale by signing the Tutor=s
Deed, which effectively conveyed the property regardless of his minority.  








Appellants counter that questions of fact exist as
to whether Jesus= father could properly convey away his son=s interests given that Jesus was legally an adult at
the time of the Tutor=s Deed due to both his age and his marriage to
Isabel Trevino the year before the Tutor=s Deed was signed. Furthermore, they allege, the
deed was fraudulent and false.[1]            Jesus= age and marital status are important in determining
which country=s law controls the Tutor=s Deed. 
According to both parties, under Mexican law at the time, a male
remained a minor until he either reached the age of twenty-five or married,
while under American law at the time, a male became an adult who could legally
enter into binding contracts and dispose of his own property at the age of
twenty-one.

We first note that Kerlin fails to attach or
otherwise provide a copy of the Tutor=s Deed which is the ground for his summary judgment
motion.  The only evidence of the deed is
a copy of a translation of the deed. 
Kerlin also provides no evidence of Jesus= age or
marital status at the time of the deed signing. 


Appellants assert that the deed was Afalse@ and Afraudulent,@ claims which Kerlin fails to respond to whatsoever
in his motion for summary judgment. 
Futhermore, appellants argue that Francisco could not enter into a Tutor=s Deed on behalf of Jesus because Jesus was married
before the deed was signed, thus making Jesus an adult in the eyes of Mexican
law at the time, regardless of his age. 
Again, Kerlin wholly fails to respond to this claim and does not dispute
that marriage would render Jesus a legal adult. 
Thus, construing the pleadings in the light most favorable to
appellants, as we are bound to do under the standard of review for summary
judgments, see Grinnell, 951 S.W.2d at 425, we conclude that material
issues of fact remain unresolved and thus summary judgment could not be granted
in favor of Kerlin on this ground.  

Mexican Court Decree

  In
connection with the first issue, Kerlin argues that the Mexican court decree
validating the Tutor=s Deed should control because Mexico still had
jurisdiction over the area at the time, and principles of comity dictate that
this court must defer to its decision. 
Appellants contend that because American troops had possession of Padre
Island at the time of the conveyance, the Mexican courts that recognized the
Tutor=s Deed had no authority to dispose of any interest
in Padre Island.








The Tutor=s Deed was allegedly signed by the parties on March
17, 1847, in Matamoros, Mexico, and confirmed by a Mexican governmental
decree.  However, by late 1845, Texas had
joined the United States, and American soldiers began occupation of the border
area, including Padre Island, while the exact boundary between Texas and Mexico
remained in dispute.  See State v.
Balli, 173 S.W.2d 522, 526 (Tex. Civ. App.BSan
Antonio 1943), aff=d, 190
S.W.2d 71 (Tex. 1944).  The Texas Supreme
Court has noted that it never intimated that Athe
Mexican government had authority to grant lands in Texas north or east of the
Rio Grande after the signing of the Treaty of Guadalupe Hidalgo [signed in
1848], or for that matter, after it lost its de jure jurisdiction in 1836.@  Kenedy
Pasture Co. v. State, 231 S.W. 683, 692 (Tex. 1921).  In fact, the rule in this State is Atitle to lands within the original Mexican state of
Tamaulipas and the present boundaries of Texas, that was good as against the
Mexican government on December 19, 1836, is within the protection of the treaty
and entitled to recognition in the courts.@  Balli,
173 S.W.2d at 536.  Title to land in
Texas that was acknowledged by the Mexican government after the December
19, 1836 date is accordingly not given such automatic deference and
recognition.  

Kerlin argues that, Aby the
Treaty of Guadalupe Hidalgo, ratified on the 30th day of May 1848, Mexico
acknowledged the Rio Grande as the boundary between Mexico and the United
States.  The jurisdiction of the Mexican
State of Tamaulipas over the premises in dispute did not cease until then.@  Given the
statements made by the Texas courts in Kenedy Pasture Co. and Balli,
which imply that the Mexican government lacked jurisdiction at the time the
deed was signed, we do not think the question of when Mexican jurisdiction over
Padre Island ceased can be so easily answered at this stage in the proceedings
simply by reference to the Treaty of Guadalupe Hidalgo, which formally ended
hostilities. 








Kerlin also argues that Martin v. Weyman, 26
Tex. 460, 465 (Tex. 1863), confirms his assertion that the Mexican court still
had jurisdiction over the lands in dispute when it authorized and confirmed the
sale.   We disagree; Martin
involves a different tract of land along the disputed border area.  See id.  Furthermore, Martin implies that the
question of which country retained de facto jurisdiction over land lying in the
border areas during this era is a fact issue to be decided in trial:  Athe court found, a jury having been waived, that at
the date of the conveyance . . . , the land in controversy was de facto within
the jurisdiction of the Mexican government, and subject to the control of the
civil authorities of the city of Matamoros.@  Id. 
Finally, the opinion notes that AIt was admitted that the United States flag was
raised on the north bank of the Rio Grande on the 22d day of March, 1846.@  Id. at
464.  Thus, Martin, at most, can
be used to support an assertion that the determination of which country had jurisdiction
to authorize the sale of Padre Island is a fact issue to be resolved on a
case-by-case basis, and, at least, can be used in support of the proposition
that a deed signed after Athe United States flag was raised@ would fall under Athe de
facto as well as de jure jurisdiction@ of the state of Texas.  Id. at 466.  It is unknown when the U.S. flag was
officially raised on Padre Island, although American troops had been occupying
the island since 1845.

The uncertainty of the time was in fact reflected in
the language of the Tutor=s Deed itself, which at several points includes the
following language:








[Francisco]
believes that the proposed sale of the share of pasture land of the Island of
Corpus Christi belonging to his minor children . . . is advantageous to the
parties aforesaid, but he understands that in addition it is made necessary by
the state of war in which Mexico is found with the United States, who if they
should unfortunately arrive at the consummation of their usurpation of the
Department of Texas with the boundaries which they have fixed down to the Rio
Bravo [Rio Grande], it is to be expected that they will not respect the title
of the proprietors in said share of pasture land, these remaining in
consequence dispossessed of it, which will not happen if in time they secure
its value by means of the sale now proposed.

 

Neither party has, at
this point, conclusively established which nation exercised jurisdiction over
Padre Island.  The original parties
themselves seemed uncertain as to their ability to effectively convey the land
under the authority of the Mexican government. 
While the principle of comity would typically dictate that Texas should
honor the decrees of the Mexican courts, see Forum Ins. Co. v. Bristol‑Myers
Squibb Co., 929 S.W.2d 114, 118 (Tex. App.BBeaumont
1996, writ denied), the principle does not extend so far as to force Texas
courts to recognize decrees and orders that the Mexican court had no
jurisdiction to render.  Given that Texas
courts have held the Mexican government was divested of its jurisdiction over
the disputed area possibly as early as 1836 and at least by 1845 or 1848, the
Mexican court affirming the transfer of Padre Island in 1847 was most likely
without jurisdiction over the property involved.  In any case, Kerlin has not provided
sufficient evidence that the Mexican government retained jurisdiction over the
land in dispute, and summary judgment could not be granted in his favor on this
ground.

State v. Balli

Kerlin argues as his
third ground for summary judgment that the decision in State v. Balli
bars appellants= suit by operation of the doctrine of stare
decisis.  He argues that in that opinion,
the Texas supreme court decided that Francisco Balli had sold all of his
children=s interest in Padre Island.  Appellants disagree that Balli dealt
with an identical question of law as is presented in their case.








The doctrine of stare decisis governs only the
determination of questions of law and its observance does not depend upon
identity of parties. Swilley v. McCain, 374 S.W.2d 871, 875 (Tex.
1964).  After a principle, rule, or
proposition of law has been squarely decided by the supreme court, the decision
is accepted as a binding precedent by courts of lower rank when the very point
is again presented in a subsequent suit between different parties.  Id.; see Lubbock County v.
Trammel's Lubbock Bail Bonds, 80 S.W.3d 580, 585 (Tex. 2002).  As a general rule, however, the determination
of a disputed issue of fact is not conclusive under the doctrine of stare
decisis, when the same issue later arises in another case between persons who
are strangers to the record in the first suit. 
Swilley, 374 S.W.2d at 875.

The statement in the Balli opinion that
Kerlin claims acts to bar this claim is the following, included in a list of
various conveyances involving Balli family land in south Texas: AFrancisco Balli, as the father and guardian of his
children, conveyed to Nicolas Grisante their interests, to whom the priest had
devised one-seventh of one-half of Padre Island as the children of said
Francisco Balli.@  Balli,
190 S.W.2d at 81.  The question of law
actually decided in the Balli case was whether the State of Texas could
secure for itself the title and possession of Padre Island.  See id. at 73.  Thus, the issue of the validity of Francisco=s conveyance to Grisanti on behalf of his children
was never an issue of law squarely presented to and decided by the supreme
court and thus, remains an issue open for dispute and determination by this
court.  See Swilley, 374 S.W.2d at
875.  Stare decisis is inapplicable and
we conclude summary judgment could not be granted on this ground. 

Havre v. Dunn

Kerlin argues as his fourth ground for summary
judgment that the descendants of Jesus Balli already settled in Havre v.
Dunn, No. 12469 (103rd Dist. Ct., Cameron County, June 9, 1928), which is
res judicata of their claims here.  








Res judicata precludes relitigation of claims that
have been finally adjudicated, or that arise out of the same subject matter and
that could have been litigated in the prior action.  Barr v. Resolution Trust Corp., 837 S.W.2d
627, 628 (Tex. 1992).  For the doctrine
of res judicata to bar further litigation of a claim, there must be proof of
the following: (1) the existence of a prior final judgment on the merits by a
court of competent jurisdiction, (2) the identity of parties or those in
privity with them, and (3) a second action based on the same claims that were
raised or could have been raised in the first action.  Amstadt v. U.S. Brass Corp., 919
S.W.2d 644, 652 (Tex. 1996).  A party
asserting the doctrine of res judicata as a defense has the burden of
establishing evidence that proves it applies, which includes the judgment and
pleadings from the previous suit, or the doctrine will not apply.  See Scurlock Oil Co. v. Smithwick, 787
S.W.2d 560, 562 (Tex. App.BCorpus Christi 1990, no writ); see also Jones v.
City of Houston, 907 S.W.2d 871, 874 (Tex. App.BHouston [1st Dist.] 1995, writ denied).

In this case, Kerlin included only the judgment, and
not the pleadings, from Havre v. Dunn when asserting his res judicata
defense.  In the interests of justice,
however, and given the age of the Havre opinion, we will consider the
merits of his claim despite the absence of the Havre pleadings.  See Tex. Capital Secs. Mgmt. v. Sandefer,
80 S.W.3d 260, 265 (Tex. App.BTexarkana 2002, no pet.).

Kerlin relies on the following statement made in Havre
v. Dunn: 

[T]he descendants and surviving and only heirs of
Jesus Balli . . . announced in open court that pending the trials of this suit
the defendants Sam A. Robertson and W.E. Callahan have acquired by purchase,
for the sum of Fifteen Hundred ($1500.00) Dollars, all and singular each and
every interest, claim and demand which said defendants above named as
descendants of said Jesus Balli and his brother and sister, have or claim in or
to the lands and premises in controversy in this suit.  








 

Kerlin, however, was not involved in the Havre
case on either side; according to the allegations of appellants, Kerlin
initially became involved with the Balli family in 1938, ten years after the Havre
case was decided, when he sought to re-open the suit in order to obtain his own
property on Padre Island through the acquisition of interests of various Balli
family members.

Several years after the Havre case was
decided, the judge granted a motion for new trial; however, before the new trial
was held, he retired and his order for a new trial was rescinded by his
successor judge.  The rescission was
appealed and the court of civil appeals held that the successor judge had erred
in rescinding the order granting the new trial. 
See Staples v. Callahan, 138 S.W.2d 206, 208 (Tex. Civ. App.BSan Antonio 1940), aff=d,
Callahan v. Staples, 161 S.W.2d 489 (Tex. 1942).  The supreme court affirmed, see id.,  but this new trial was apparently never
held.  See Sauceda v. Kerlin, 164
S.W.3d 892, 906-07 (Tex. App.BCorpus Christi 2005, pet. granted).    








Given that the Texas Supreme Court has affirmed a
decision mandating a new trial in the Havre case, we are reluctant to
apply the doctrine of res judicata to any legal holding emanating from the
original decision.   See Amstadt v.
U.S. Brass Corp., 919 S.W.2d at 652 (requiring there be a final judgment on
the merits in order for res judicata to bar a claim).  Furthermore, there is no identity of the
parties; Kerlin was not involved whatsoever in the Havre case when it
was first handed down.  Once he became
involved in the rehearing issue some ten years later, he apparently was attempting
to assert claims on behalf of  -
not adverse to - the Balli family.  See id. 
Finally, the claims asserted by appellants (i.e., that Kerlin committed
trespass, conversion, and fraud against them) were not claims raised in the
first action.  See id.  We in fact find it both troubling and
offensive that Kerlin, who became involved in the litigation by seeking to
reverse the effects of the Havre decision against the Ballis, would now
turn around and use the Havre decision offensively against the same Balli
family.  See Mulvey v. Mobil Producing
Tex. & N.M.. Inc., 147 S.W.3d 594, 607-08 (Tex. App.BCorpus Christi 2004, pet. denied) (discussing
quasi-estoppel and unconsionability).

U.S. v. 34,884 Acres

Kerlin argues as his fifth ground for summary
judgment that the decision in U.S. v. 34,884 Acres, No. C.A. 142 (S.D.
Tex. 1948), aff=d, 182
F.2d 750 (5th Cir. 1950), bars appellants= claims under the doctrines of res judicata and
collateral estoppel.

Because 34,884 Acres was a federal opinion
now being used to bar a state court proceeding, we review this claim under the
federal standards for res judicata and collateral estoppel.  See San Antonio Indep. Sch. Dist. v.
McKinney, 936 S.W.2d 279, 281 (Tex. 1996). 
Under federal law, the doctrine of res judicata only will apply if (1)
the parties in both suits are identical, (2) the prior judgment was rendered by
a court of competent jurisdiction, (3) there is a final judgment on the merits,
and (4) the same cause of action is involved in both cases.  Id.; see Eagle Properties, Ltd. v.
Scharbauer, 807 S.W.2d 714, 718 (Tex. 1990).  Additionally, even if the above four
requirements are established, res judicata will not apply if the federal court
(1) lacked jurisdiction over the omitted state law claims, or (2) possessed
jurisdiction over the omitted state law claims but would clearly have declined
to exercise that jurisdiction as a matter of discretion.  McKinney, 936 S.W.2d at 281.








For collateral estoppel, the rule is the same under
both federal and Texas law:  A[a] party seeking to assert the bar of collateral
estoppel must establish that (1) the facts sought to be litigated in the second
action were fully and fairly litigated in the first action; (2) those facts
were essential to the judgment in the first action; and (3) the parties were
cast as adversaries in the first action.@  John G.
& Marie Stella Kenedy Mem. Found. v. Dewhurst, 90 S.W.3d 268, 288 (Tex.
2002). 

In 34,884 Acres, the United States brought
suit to condemn 34,884 acres of Padre Island in order to create a bombing
range.  The suit named many parties as
defendants, including the Balli family, as well as Kerlin, individually and in
his capacity as trustee. The opinion noted that the Balli family members Aappeared and answered herein by attorneys of their
own selection, and have asserted divers claims, inconsistent as among
themselves, to interests in and to the lands described in Plaintiff=s Petition.@  Thus, there
is no record that the specific Balli family member parties are the same in both
the 34,884 Acres case and the case before us now, as the court
explicitly refers to disputed claims between various unnamed family
members.  








Also, the court in 34,884 Acres noted,
without distinguishing between the various claims brought by Balli family
members, that Aall of [their] claims are precluded and are res
judicata and stare decisis by reason of the final judgment . . . in that
certain suit styled Lizzie Havre et al. v. Pat F. Dunn, et al.@  We have
concluded for the reasons discussed above that it would be improper and unjust
to bar the current claims of the Balli family based on the preclusive effects
of Havre v. Dunn.   We therefore
also decline to extend the holding of Havre v. Dunn, through its mention
in the 34,884 Acres decision, to appellants here, and we hold that the
trial court could not have properly rendered summary judgment in favor of
Kerlin on the res judicata effect of 34,884 Acres.  Furthermore, we also note that collateral estoppel
cannot apply as the claims of the Jesus Balli descendants against Kerlin were
not fully and fairly litigated in the 34,884 Acres case and the parties
were not cast as adversaries in that action. 
See Dewhurst, 90 S.W.3d at 288. 


Thus, we conclude, the trial court could not have
granted summary judgment on any of the five grounds asserted by Kerlin in his
motion.  We sustain appellants= five issues on appeal and reverse the judgment of
the trial court.

Conclusion

We reverse the judgment of the trial court and
remand for further proceedings.  

 

 

                                           

Rogelio Valdez,

Chief Justice

 

 

 

 

Memorandum Opinion delivered and filed

this 5th day of January, 2006.











[1]Kerlin alleges in his appellate
brief that AIn any event, the fact that Jesus
Balli signed the deed is undisputed on this appeal.@ 
We disagree; appellants repeatedly refer to the deed as Afalse@ and Afraudulent,@ implying that no part of the deed,
including the signature of Jesus, can be considered valid.  Furthermore, in a motion for summary
judgment, all doubts must be resolved in the nonmovant=s favor.  Am. Tobacco Co. v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1997).  Here, Kerlin
failed to provide any evidence regarding Jesus= signature; instead of attaching a
copy of the signed Tutor=s Deed itself to his motion for
summary judgment, he provided a copy of a translation of the deed, which did
not include any signatures.  Resolving
all doubts in appellant=s favor, we conclude there is a
genuine issue of material fact unresolved as to whether the deed was signed by
Jesus, given the dispute over Jesus= status as a minor and the absence of the signature on the
deed itself as evidence.